[Civ. No. 49429. Second Dist., Div. Four. May 11, 1977.]

DORIS BAILLARGEON, Plaintiff and Appellant, v.
DEPARTMENT OF WATER AND POWER OF THE CITY OF
LOS ANGELES et al., Defendants and Respondents.

## Counsel

David S. Sperber for Plaintiff and Appellant.

Burt Pines, City Attorney, Edward C. Farrell, Chief Assistant City Attorney, Charles Zinger and David J. Oliphant, Deputy City Attorneys, for Defendants and Respondents.

## Opinion

**JEFFERSON (Bernard), J.**—Plaintiff Doris Baillargeon filed against defendants Department of Water and Power of the City of Los Angeles (hereinafter, Department), Water and Power Employees Retirement Plan (hereinafter, The Plan), and Board of Administration of the Water and Power Employees Retirement Plan (hereinafter, Board), a complaint entitled "1. Breach of Contract (Promissory Note)[1] 2. Infliction of Mental Distress 3. Declaratory Relief."

Defendants Department and Board answered the complaint, setting forth various affirmative defenses, including the statute of limitations. Discovery ensued. Defendants then moved for judgment on the pleadings. After oral argument, the trial court granted the defense motion. A judgment was accordingly signed and entered. Plaintiff appeals; we reverse.

We consider first the standard of appellate review applicable when judgment has been granted on the pleadings. In the case at bench, defendants Board and Department utilized in the motion for judgment on the pleadings, which resembles a general demurrer, a varied attack on plaintiff's complaint, combining the assertion that she had failed to state a cause of action with defenses based upon limitation of actions. ■ The defense of the statute of limitations may be raised by demurrer. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 812, p. 2421.)

■ Since judgment on the pleadings is similar to a judgment following the sustaining of a demurrer, the standard of appellate review is the same. "Like the demurrer, the motion for judgment on the

---

[1]We can only assume, since no promissory note is involved in this litigation, that plaintiff intended to say "Promissory Estoppel" rather than "Promissory Note."

pleadings is confined to the *face of the pleading under attack.* [Citations.] This means two things: [¶] *First,* if the pleading, though uncertain or otherwise defective in form, sufficiently states a cause of action or defense, the motion cannot be granted on the basis of a showing of extrinsic matters by inference from attached exhibits, by affidavits, or otherwise. [Citations.] [¶] *Second,* a sufficient complaint cannot be thus attacked by reference to matters set forth in the answer. [Citations.] [¶] But the unqualified statement of the foregoing rule may be misleading . . . . [as] various outside matters may be looked to under the doctrine of judicial notice . . . ." (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 162, pp. 2817-2818.) (Italics in original.)

■ The motion for judgment on the pleadings performs the function of a general demurrer. Therefore, it " 'admits all material and issuable facts pleaded.' " (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 412 [62 Cal.Rptr. 401, 432 P.2d 3].) "[T]he facts alleged in the pleading attacked must be accepted as true, and the court may also consider matters subject to judicial notice." (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 630 [99 Cal.Rptr. 393].) With these principles in mind, we approach the complaint.

The complaint, filed January 24, 1973, alleged that plaintiff became an employee of defendant Department on July 13, 1959, and a member of The Plan on February 1, 1960. In June 1966, defendant Board issued a 41-page booklet purporting to give general information concerning the benefits available through The Plan to employee members. The booklet contained the following language concerning the benefits available to a Plan participant who sustained an on-the-job injury and received workmen's compensation benefits: ". . . if you are on monthly salary, you would be paid supplemental benefits from the disability fund [of The Plan]. This assures that the amount you receive from compensation payments plus supplemental payments for an on-the-job injury at least equals the amount you would receive for disability resulting from an off-the-job sickness or injury."

Plaintiff alleged, and we must accept it as true, that this statement concerning supplemental benefits available through The Plan to employee members receiving workmen's compensation was a representation by defendants upon which she relied "in continuing her employment and in not accepting other employment."

The complaint then sets forth that in August 1966, plaintiff became ill with hypoglycemia, and believed her condition unrelated to her job. Plaintiff alleged that she was sporadically absent from her employment until January 1967, when she could no longer work. She applied to The Plan for the benefits available to her for a non-job-related injury (called Disability Benefits) and received such benefits from The Plan, a total sum of $7,788.26, until January 31, 1969, when the benefits were terminated by defendant Board.

Plaintiff alleged that in April 1968, her condition was diagnosed as hypoglycemia, and that she was informed that her condition was work-related. Plaintiff filed a workmen's compensation claim on February 28, 1969. On December 29, 1969, defendant Board filed a "Notice and Request for Allowance of Lien" in that action, seeking reimbursement of $7,350.

Plaintiff alleged that on January 14, 1972, the Workmen's Compensation Appeals Board made findings and an award in her favor. It found that plaintiff had sustained an injury "arising out of and occurring in the course of her employment"; it awarded temporary disability payments for the period from 1967 to 1971; it awarded permanent disability payments (on a 35 percent basis) for 140 weeks. It also allowed the lien of defendant Board.

Plaintiff alleged that she thereafter made demand upon defendants to provide the supplemental benefits through The Plan, described in the booklet, to equalize the difference between the workmen's compensation payments she was receiving and the amount she would have been entitled to had her condition been non-job-related "in accordance with the representations made by Defendants . . . ." Defendants, plaintiff alleged, refused to recognize plaintiff's entitlement to supplemental benefits in excess of $487.76.

In her complaint, plaintiff claimed that as a result of defendants' action in denying her demand, she sustained damages in excess of $10,000, although she did not know the exact amount of supplemental disability benefits to which she was entitled.

In a second cause of action of the complaint, plaintiff alleged that her hypoglycemic condition was seriously aggravated by defendants' termination of benefits payable to her by The Plan, and that this conduct

caused her severe mental shock and additional physical and mental pain and suffering in the sum of $20,000.

A third cause of action is set forth in the complaint. In this cause of action plaintiff sought declaratory relief establishing that she was entitled, from the inception of her disability, to supplemental benefits payable by The Plan to "equalize" the amount plaintiff would receive as the result of her job-related injury with that to which she would have been entitled had the injury not been job-related.[2] Plaintiff alleged that defendants had taken the position that she was entitled to supplemental benefits for 11 weeks only, as opposed to her claim that she was entitled to such benefits for the duration of her disability.

The record indicates that the parties to this lawsuit entered into a stipulation allowing an amendment to the complaint to add the allegation that on or about January 16, 1973, plaintiff had filed with defendants a claim "in excess of $30,000.00 for the damages sought herein." Defendants failed to act upon the claim within 45 days and the claim was thus deemed rejected. (Gov. Code, § 912.4.)

### Plaintiff's Cause of Action

■ Although inexpertly fashioned, plaintiff's complaint is reasonably susceptible to an interpretation that plaintiff was seeking to establish a cause of action based upon principles of estoppel. This attempt was undertaken in both the first and the third causes of action; the third cause of action, for declaratory relief, was merely reflective of the underlying equitable basis for plaintiff's complaint.

■ Estoppel, conceptually speaking, results from a representation of fact which the party making such representation is not legally permitted to deny. In contract law, the detrimental reliance on the promise made is regarded as a substitute for the requisite element of consideration. (See 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 189, p. 174.)

"The venerable doctrine of equitable estoppel or estoppel in pais, . . . rests firmly upon a foundation of conscience and fair dealing, . . ." (*City*

---

[2] Plaintiff does not tell us, in dollars and cents, what exact monthly amount she should receive as the result of the booklet's promise. The Plan, before us in the record, severely limits payment of supplemental benefits; the longest period of time such are payable is 26 weeks, but the period may be shorter depending upon the employee's length of service.

*of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488 [91 Cal.Rptr. 23, 476 P.2d 423].) "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

■ Applying these criteria to the case at bench, defendants knew, or were chargeable with, the fact that The Plan's actual provisions were opposed to those described in the booklet, so that the first element is established. The purpose of the defendants in issuing the booklet was to disseminate general information to their employees with the intention of persuading them that the benefits available to them were such that it was in their best interests to *remain* Department employees. Thus, it can be said that defendants intended to encourage reliance on their representations, the second element of estoppel. Plaintiff was not aware of the provisions contained in The Plan itself, and has pleaded that she was injured as the result of her reliance on the booklet. It would appear, therefore, that the elements of equitable estoppel are pleaded in plaintiff's complaint.

Invoking the doctrine of equitable estoppel against a local government entity such as defendants, however, is more difficult to achieve than it would be against a private party. ■ "It is settled that '[t]he doctrine of equitable estoppel may be applied against the government where justice and right require it. [Citations.]' [Citations.] Correlative to this general rule, however, is the well-established proposition that an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public, . . .' [Citations.] The tension between these twin principles makes up the doctrinal context in which concrete cases are decided." (*Mansell, supra,* 3 Cal.3d 462, at p. 493.)

Since *Mansell* was decided in 1970, there have been several appellate decisions discussing the doctrine of equitable estoppel, but rejecting its application, often on the ground that to apply it in the particular case would nullify a strong public policy. (See, e.g., *Pettitt* v. *City of Fresno* (1973) 34 Cal.App.3d 813 [110 Cal.Rptr. 262] (zoning); *People* ex rel.

*Dept. Pub. Wks.* v. *Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804 [114 Cal.Rptr. 499] (control of environment).)

In *Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264], a case involving zoning, the Supreme Court, however, reiterated the view set forth in *Mansell* by stating: "*Mansell* made it clear that, although estoppel may be applied against the government when justice and right require it, the doctrine is inapplicable if it would result in the nullification of a strong rule of policy adopted for the benefit of the public."

However, in *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567 [108 Cal.Rptr. 293], the doctrine of estoppel was applied in a case involving the pension rights of governmental employees who had been misled about those rights prior to and during their employment. The *Crumpler* court relied on *Driscoll, supra,* a case in which the statutory limitation of actions was misrepresented to claimants, and stated: "Good faith conduct of a public officer or employee does not excuse inaccurate information negligently given. [Citations.] In a matter as important to the welfare of a public employee as his pension rights, the employing public agency ' "bears a more stringent duty" ' to desist from giving misleading advice." (*Crumpler, supra,* 32 Cal.App.3d 567, at p. 582.)

In discussing the matter of "tension" between the doctrine of equitable estoppel and a rule of policy adopted to benefit the public, the *Crumpler* court stated: "We discern no harmful effect upon any specific public policy or interest which would result from invoking estoppel in the instant case where pension rights of a public employee are involved." (*Id.,* at p. 584.) The *Crumpler* court, therefore, was willing to employ the doctrine to avoid a clearly unjust result, a result having impact on individual public employees. No protection for any other clearly defined public interest was involved.

Here, as in *Crumpler,* benefits of public employment are in issue. Defendants argue that the general public has an interest in an actuarily sound pension and benefit system for their employees. This argument has little merit since there is little likelihood that plaintiff's recovery against defendants would jeopardize The Plan from any actuarial standpoint. In addition, it would not be beneficial to anyone for public employees to be misled—intentionally or otherwise—by an informational booklet issued to them.[3]

---

[3]Nowhere in our record has the booklet in question been reproduced in its entirety. We assume that it would have been had the booklet contained some general *caveat* as to

We therefore conclude that, as there appears to be no overriding public policy in need of protection, plaintiff has stated a cause of action in equitable estoppel.

Defendants assert that the causes of action set forth in plaintiff's complaint are barred by the applicable statutes of limitations. In discussing the limitations problem, we review the pertinent chronology of events established by the record. Plaintiff's benefits pursuant to The Plan were terminated on January 31, 1969. The complaint does not clearly tell us whether they were terminated because the Board had learned that plaintiff's injury was work-related, or that it might be. Plaintiff applied for workmen's compensation benefits on February 28, 1969. The award of those benefits was not made until January 14, 1972. Plaintiff filed a claim against defendants on January 16, 1973.

The filing of claims against local public entities is governed by the Government Code. The general applicable statute is section 911.2, which provides, in pertinent part: "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented . . . not later than the 100th day after the accrual of the cause of action. A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action."

■ The statute setting forth exceptions to this rule is Government Code section 905, which, in subdivision (f), specifically exempts "[a]pplications or claims for money or benefits under any public retirement or pension system." A preliminary issue, then, is whether plaintiff's claim was one for "money or benefits *under*" a public retirement or pension system. Plaintiff argues that her claim was actually made pursuant to The Plan—as she understood it to be. The Plan, however, never contained the provisions set forth in the booklet, but only a severely limited version of them. Plaintiff's claim is grounded upon the doctrine of estoppel. The written promise upon which she relied was *not* in The Plan but was contained in a separate document, the *booklet.* This is the essence of her claim. In our view, plaintiff was *not* suing for benefits payable pursuant to or *under* a public pension system, and thus Government Code section 905, subdivision (f), is not applicable.

its accuracy, directing interested employees to consult The Plan (the provisions of which are barely intelligible).

We must look, therefore, to Government Code section 911.2 as the applicable statute. The trial judge indicated at the hearing on defendant's motion that he had determined that plaintiff's claim was for her injury, and that the 100-day clause of section 911.2 applied. But the judgment which the trial court signed and entered is based on the ground of a failure of plaintiff's complaint to state a cause of action. ■ It is to be noted that in her first and third causes of action, plaintiff did not allege a cause of action for damages for personal injury caused by hypoglycemia; rather, she asserted equitable estoppel, which sounds more in contract than in tort. Therefore, plaintiff's estoppel claim fell within the second clause of Government Code section 911.2, providing for a year's limitation on a claim "relating to any other cause of action" [than death or injury]. The 100-day limitation, however, did have application to plaintiff's second cause of action for damages for the infliction of emotional distress, which sounds in tort (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]) and is an action for damages for personal injury.

We note that the one-year statute of limitation for filing claims, contained in Government Code section 911.2, is mirrored in the Los Angeles City Charter, section 376.1, which provides that: "Notwithstanding the six-month period for the presentation of claims as provided for in Section 376, from and after January 1, 1962, the period for presenting claims as provided for in Section 376 shall be one year, and Section 376 shall be construed and applied in accordance with this section, except that this section shall have no retrospective effect as to claims and demands as to which the period for presentation thereof has expired prior to January 1, 1962."

Section 376 of the Charter provides that "[n]o suit shall be brought on any claim for money or damages against the City of Los Angeles . . . until a demand for the same has been presented [within a six-month period]."

It would appear that the one-year claim-filing limitation applicable to plaintiff's claim would bar her suit unless her parallel action for workmen's compensation benefits tolled the claim-filing statute of limitations. Both plaintiff and defendants in the present action concede that tolling or suspension of the statute may be involved in determining whether plaintiff was in fact barred from proceeding against defendants.

From the record before us, we conclude that plaintiff's cause of action accrued on January 31, 1969, when defendants ceased payment of any benefits pursuant to The Plan. This constituted a breach of the promise contained in the Booklet assuring supplemental benefit payments when an employee sustained an on-the-job injury. The statute of limitations commenced running as of that date. However, tolling would have commenced on February 28, 1969, when plaintiff filed her workmen's compensation case—if tolling is allowable under the circumstances presented here.

■ The underlying principle behind tolling or suspension of the statute of limitations to enable an injured person to invoke it has been stated to be that " '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one' " (*Elkins* v. *Derby* (1974) 12 Cal.3d 410, 414 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839]), justice requires suspension of the time limitations as to the other remedies available to that person. In *Elkins,* the plaintiff pursued a workmen's compensation case rather than filing a personal injury action against defendant. The one-year statute of limitations for personal injury actions ran while plaintiff was pursuing—and as it developed, unsuccessfully—the compensation action. The *Elkins* court held that the personal injury statute of limitations was tolled while plaintiff was pursuing his other remedy. Similar to *Elkins* in principle is the case of *Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626 [86 Cal.Rptr. 198].

In the instant case, plaintiff's injury could have been work-related or not-work-related. Until she had ascertained that pertinent fact, she could not know the extent and the type of benefits she could claim were payable by defendants. In a very real sense, it was necessary for her to establish first her eligibility for the basic workmen's compensation benefits, before seeking the promised supplemental benefits offered in the booklet. We hold, therefore, that plaintiff may invoke the tolling of the statute of limitations in the case at bench.

In both *Elkins* and *Myers* it is recognized that the purpose of limitation statutes is to apprise governmental entities of claims while they are fresh—while factual material relative to defense can be gathered. As in those cases, defendants herein knew at an early stage in the proceedings that there was a question as to whether plaintiff's injury was work-related—the pertinent fact to be established. They also knew that plaintiff, while pursuing her primary remedy, had been promised

supplemental benefits by the booklet. Thus, no prejudice to defendants appears here.

■ Defendants assert that, even allowing tolling, plaintiff's claim that was presented to defendants on January 16, 1973, was filed two days after the one-year limitations period had run and, hence, her claim is barred. In part, plaintiff counters with the view that her claim is in the nature of one for installment payments, and she seeks to invoke the rule that the statute of limitations runs from the due date of each individual installment. (See *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 464 [326 P.2d 484].) Plaintiff's reasoning is not persuasive here. The applicable principle is stated in *Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427, 430 [116 P.2d 37, 136 A.L.R. 800]: "An action to determine the existence of the right thus necessarily precedes *and is distinct from* an action to recover instalments which have fallen due *after* the pension has been granted." (Italics added.) Plaintiff herein is seeking to establish her *right* to benefits; she is *not* suing to recover on installments *after* benefits have been granted.

Defendants, however, have assumed—incorrectly—that the suspension of the one-year limitations statute ended on January 14, 1972, when a referee of the Workmen's Compensation Appeals Board made findings and an award in the plaintiff's case. At issue is whether the findings and award were final as of this date. ■ As was pointed out in *Elkins,* "[t]here can be little doubt that a tolling rule must suspend the running of the limitations period through the date on which the final compensation decision becomes final rather than the date on which the first compensation decision is filed. [Citations.]" (*Elkins, supra,* 12 Cal.3d 410, at p. 413, fn. 1.)

Labor Code section 5900, subdivision (a), authorizes an aggrieved person to petition the appeals board for reconsideration of an award filed by a referee. Labor Code section 5903 provides that such a petition for reconsideration of an award must be made within 20 days after such award has been filed. Labor Code section 5900, subdivision (b), authorizes the appeals board, on its own motion, to grant reconsideration of an award made by a referee within 60 days after such award has been made. Labor Code section 5950 provides for judicial review of a decision by the appeals board. Judicial review is effected by an application for a writ of review which must be made within 30 days after a petition for reconsideration is denied, or, if a petition is granted or reconsideration is

had on the appeals board's own motion, within 30 days after the filing of the order, decision, or award following reconsideration.

Labor Code sections 5900, 5903 and 5950 establish that plaintiff's compensation award was not final on January 14, 1972. Hence, plaintiff's cause of action was still viable on January 16, 1973, when she filed her claim with defendants, as less than 12 months of actionable time had passed since the date of finality of her compensation award.

The judgment for defendants on the first and third causes of action in plaintiff's complaint was erroneous. The second cause of action, however, was barred by the 100-day statutory period for filing a tort claim. (Gov. Code, § 911.2.) We perceive no merit to defendants' contention that the compensation case become res judicata as to plaintiff's action based on equitable estoppel.

The judgment in favor of defendants on the first and third causes of action is reversed; the judgment in favor of defendants on the second cause of action is affirmed. Appellant shall recover her costs on appeal.

Kingsley, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied June 6, 1977, and respondents' petition for a hearing by the Supreme Court was denied August 4, 1977.