[No. B122940. Second Dist., Div. Three. May 20, 1999.]

BAINES PICKWICK LIMITED, Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

## COUNSEL

James K. Hahn, City Attorney, Jerry Montgomery, Assistant City Attorney, and Dorothy Berry, Deputy City Attorney, for Defendant and Appellant.

Craig S. Elkin for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Defendant and appellant City of Los Angeles (the City) appeals a judgment in favor of plaintiff and respondent Baines Pickwick Limited (Baines) in an action for breach of contract.

The essential issue presented is whether Baines's action is barred by its failure to comply with the claims presentation requirements of the government claims statutes (Gov. Code, § 900 et seq.) prior to filing suit.[1]

The commonly used label, Tort Claims Act, applying to section 810 et seq., has led to confusion among trial and appellate courts in determining the applicability of the government claims presentation statutes to *contract* claims. However, a careful analysis of the statutory scheme clearly indicates the claims presentation requirements of the Tort Claims Act, found thereafter at section 900 et seq., apply to *both* tort and contract claims against public entities. The judgment therefore is reversed with directions.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

In 1993 and 1994, the City entered into contracts with Starline/Gray Line Tours (Starline) to provide bus transportation for senior citizen and youth groups to various activities. By September 1994, Starline had submitted several invoices to the City which went unpaid. Pat Rodriguez, a Starline employee, met with employees of the City's department of transportation (DOT) in an attempt to assist DOT in processing payment of the unpaid invoices by giving DOT duplicate copies of the invoices and supporting documentation.

On October 12, 1994, the Internal Revenue Service seized Starline's assets. On November 4, 1994, Baines purchased Starline's assets at an Internal Revenue Service sale.

In mid-December 1994, Rodriguez, now on behalf of Baines, again contacted DOT to collect on the unpaid invoices. Rodriguez spoke with John Fong at DOT, who stated he needed copies of each open invoice and supporting documentation to process payment. On December 16, 1994, Rodriguez sent the requested materials to Fong.

The following week, Rodriguez again contacted DOT and was told DOT had received the documents she sent on December 16, 1994, and that most of the invoices had been processed and were awaiting payment.

In late February 1995, after Rodriguez had contacted a deputy mayor, Fong advised her DOT would be making a $20,000 payment on March 7, 1994, and that DOT would prepare the balance of the payments.

---

[1]All further statutory references are to the Government Code, unless otherwise indicated.

On March 2, 1995, Fong told Rodriguez his legal department had requested a letter stating Baines had acquired Starline's accounts receivable and that upon receipt of said letter, the DOT would release the funds to Baines. Baines complied with this request.

On May 2 and May 8, 1995, the City sent two checks totaling $16,175.50 to Baines's attorney. On May 11, 1994, Baines's attorney informed Rodriguez he had received the checks. Rodriguez then was instructed to cease her collection efforts.

2. *Proceedings.*

On January 24, 1996, Baines filed this action against the City. The operative first amended complaint alleged breach of contract and common counts and prayed for $95,091 in damages. The City filed a general denial.

On December 11, 1996, the City filed a motion for summary judgment on the ground the action was barred by Baines's failure to comply with the claims presentation requirements of section 915 of the Tort Claims Act.

Baines filed opposition, contending it had substantially complied with the claims presentation requirements, or in the alternative, that the City should be estopped from asserting Baines's noncompliance.

On January 31, 1997, the trial court denied the City's motion for summary judgment, ruling the claims presentation provisions of the Tort Claims Act do not apply to an action for breach of contract. The trial court subsequently denied a motion by the City for reconsideration. Thereafter, this court denied the City's petition for writ of mandate/prohibition.

The matter proceeded to a nonjury trial on February 4, 1998. Following a one-day trial, the trial court entered judgment against the City and in favor of Baines in the sum of $34,292 plus costs. The judgment provides: "The evidence establishes to the court's satisfaction that [the City] is liable to Baines . . . on invoices submitted for services rendered to the City between July 1994 and April 1995. Those invoices total $186,533.50. [¶] From that amount the City is entitled to credit for invoices paid in the sum of $152,240.99. The balance due and owing plaintiff is the sum of $34,292.51."

The City filed a timely notice of appeal.

CONTENTIONS

The City contends: while there is a split of authority, this court should follow those decisions which hold the claims statutes apply to

contract claims; Baines's action was barred by its failure to comply with the claims statutes; the invoices presented to DOT were not claims within the meaning of the claims statutes; and the City should not be estopped from asserting Baines's noncompliance with the claims statutes.

DISCUSSION

1. *The claims presentation requirements of the statutory scheme apply to contract actions.*

    a.  *Overview of the statutory scheme.*

"Before 1963, there was a disorderly array of decisional law and scattered statutes concerning government tort liability. [Citations.] In 1963, the legislature enacted several interrelated statutory provisions effective September 20, 1963. [Citation.] Although these provisions were not given a 'short title' by the legislature, they have become known as the Tort Claims Act . . . ." (Cal. Government Tort Liability Practice (Cont.Ed.Bar 1992) § 2.1, pp. 69-70.)

The Tort Claims Act "was enacted in six separate legislative measures: [¶] Substantive liabilities and immunities of public entities and employees were treated principally in Stats 1963, ch 1681, which enacted Govt C §§ 810-895.8 . . . . [¶] *Procedural provisions for claims presentation, actions and judgments concerning public entities and public employees were enacted by Stats 1963, ch 1715 as Govt C §§ 900-978.8, together with conforming amendments and repeals.* These sections constitute Govt C Title 1, Div. 3.6, pts. 3-5. . . . [¶] Insurance coverage against tort liability of public entities and public employees was authorized by Stats 1963, ch 1682, which enacted Govt C §§ 989-991.2 and 11007.4, . . . [¶] The defense of public employees in tort actions arising out of their official duties was the subject of Stats 1963, ch 1683, which enacted Govt C §§ 995-996.6 . . . . [¶] Workers' compensation benefits for persons assisting in law enforcement and fire suppression were provided by Stats 1963, ch 1684, which added Lab C §§ 3365-3366 . . . . [¶] A formal procedure for maintaining a 'Roster of Public Agencies,' applicable to local entities other than cities and counties and affecting claims presentation and service of process, was enacted by Stats 1963, ch 1805, which added Govt C §§ 945.5, 960-960.5, and 53050-53052." (Cal. Government Liability Practice, *supra*, § 2.5, pp. 73-74, italics added.)

These statutory provisions, covering a range of diverse topics, have been referred to collectively as the Tort Claims Act over the years, leading to

confusion of the sort reflected in the instant matter. To resolve the issue before us, it is necessary to examine the specific applicability of the claims presentation statutes set forth at section 900 et seq.

b. *Claims presentation requirements and rationale.*

Pursuant to section 911.2, claims against local governmental entities are required to be presented to the relevant entity within six months (personal injury or property damage) or one year (other causes of action) of the date of accrual of the cause of action. "The public entity has 45 days to grant or deny the claim; if the claim is not acted upon within 45 days, it is deemed rejected. (§ 912.4.) If written notice of rejection is sent, suit must be brought within six months. (§ 945.6, subd. (a)(1).) If no written notice is given, the claimant is allowed two years from the accrual date to file the suit. (§ 945.6, subd. (a)(2).)" (*Chalmers* v. *County of Los Angeles* (1985) 175 Cal.App.3d 461, 464 [221 Cal.Rptr. 19].)

Section 910 directs that a claim must show (1) the name and address of the claimant, (2) the address to which notices are to be sent, (3) the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted, (4) a general description of the indebtedness, obligation, injury, damage or loss incurred, (5) the name or names of the public employee or employees causing the injury, damage, or loss, and (6) the amount claimed if it totals less than $10,000. The claim should be presented to the clerk, secretary or auditor of the relevant public entity. (§ 915.)

■ The purpose of the claims presentation requirement is to facilitate early investigation of disputes and settlement without trial if appropriate, as well as to enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future. (*Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699, 709 [263 Cal.Rptr. 119, 780 P.2d 349]; *Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1079 [195 Cal.Rptr. 576].)

c. *Express statutory language compels the conclusion the claims presentation provisions found in the so-called Tort Claims Act apply to contract, as well as to tort, claims.*

■ As indicated, the series of enactments in 1963, summarized above, were not given a descriptive short title by the Legislature, and are still being referred to as the Tort Claims Act. (Cal. Government Tort Liability Practice, *supra*, § 2.1, pp. 69-70.) The claims presentation statutes, at section 900 et seq., within that extensive statutory scheme, likewise are commonly referred

to as the Tort Claims Act. (See, e.g., *Wilson* v. *San Francisco Redevelopment Agency* (1977) 19 Cal.3d 555, 557 [138 Cal.Rptr. 720, 564 P.2d 872]; *Alliance Financial* v. *City and County of San Francisco* (1998) 64 Cal.App.4th 635, 638 [75 Cal.Rptr.2d 341].) However, as explained below, the claims presentation requirements are not limited to matters sounding in tort. Therefore, the label Tort Claims Act is a misnomer, at least with respect to the claims presentation statutes. Part 3 of division 3.6, section 900 et seq., is more accurately described as a government claims act.

Even a cursory review of the statutory scheme makes it obvious the Legislature did not intend to exempt contract claims from the claims presentation requirements. With certain exceptions not applicable here, no suit for "money or damages" may be brought against a *local public entity* until a written claim therefor has been presented to the public entity and either has been acted upon or is deemed to have been rejected. (§§ 905, 945.4.)

Similarly, section 905.2, pertaining to claims against *the state*, requires the presentation of "all claims for money or damages against the state: [¶] . . . [¶] (c) For money or damages (1) *on express contract*, or (2) for an injury for which the state is liable." (Italics added.)

With respect to the contents of the claim, section 910 requires the claimant to specify the "date, place and other circumstances of the occurrence *or transaction* which gave rise to the claim asserted" (§ 910, subd. (c), italics added), as well as a "general description of the *indebtedness, obligation, injury, damage or loss incurred* . . . ." (§ 910, subd. (d), italics added.)

Further, section 910.2, pertaining to signature requirements, makes it clear that claims against local public entities arising out of services rendered by a claimant are subject to the claims presentation requirement. Section 910.2 states: "The claim shall be signed by the claimant or by some person on his behalf. *Claims against local public entities for supplies, materials, equipment or services* need not be signed by the claimant or on his behalf if presented on a billhead or invoice regularly used in the conduct of the business of the claimant." (Italics added.)

The language set forth above makes it clear the claims presentation requirements are not limited to tort claims, but extend also to claims for money or damages based on contract.[2] Accordingly, before a vendor like Baines may bring suit against a local public entity such as the City for

---

[2]This is the same conclusion reached by California Government Tort Liability Practice, *supra*, section 6.7, page 636, and section 6.17, page 652.

failure to pay for goods or services rendered, the vendor is required to comply with the claim presentation requirements.

### d. *Split of authority exists.*

Irrespective of the apparent clear directives of section 900 et seq., there is a split of authority, as discussed below, on the question of whether an action on a contract is an action for money or damages within the purview of the claims presentation requirements. (*Alliance Financial* v. *City and County of San Francisco, supra,* 64 Cal.App.4th at p. 641.) However, in view of the express language quoted above, we readily align ourselves with those decisions applying the claims statutes to contract matters, concluding such claims are *not* exempt from the government claims statutes.

### 2. *Decisions applying claims statutes to contract matters.*

The leading case of *Alliance Financial* v. *City and County of San Francisco, supra,* 64 Cal.App.4th 635, attempted to clarify the claims statutes morass. Unfortunately, it was not decided until 1998, after this matter was resolved below, and therefore was not available as clear precedent for the trial court herein.

There, AAA Building and Maintenance Contractors entered into a contract with San Francisco to furnish janitorial services. Alliance Financial purchased a number of AAA invoices representing amounts due for those services and AAA assigned to Alliance the right to payment on the invoices. After San Francisco failed to pay, Alliance Financial filed suit against the public entity seeking payment of the money due on the invoices. (*Alliance Financial* v. *City and County of San Francisco, supra,* 64 Cal.App.4th at pp. 639-640.)

San Francisco moved for summary judgment, arguing that although Alliance Financial had sent invoices and notices, it had not filed a governmental claim "and thus was barred from filing suit by the claims presentation requirements of the California Tort Claims Act." (*Alliance Financial* v. *City and County of San Francisco, supra,* 64 Cal.App.4th at p. 640.) Alliance Financial opposed the motion, contending the claims presentation statutes do not apply to an action seeking payment of invoices, and in any event, the invoices and other correspondence sent by Alliance satisfied the claims requirements. (*Ibid.*) The lower court granted San Francisco's motion for summary judgment. It found Alliance's complaint was subject to the claims presentation requirements, and that the invoices were not themselves claims. (*Id.,* at p. 651.) Alliance Financial appealed. (*Id.,* at p. 640.)

With respect to the applicability of the Tort Claims Act to contract actions, the reviewing court agreed with the lower court's conclusion that the plaintiff's complaint was subject to the claims procedures. (*Alliance Financial* v. *City and County of San Francisco, supra,* 64 Cal.App.4th at pp. 641-642, 651.) It reasoned: "Prior to 1959, Government Code section 29704 provided that parties wishing to institute a suit on any 'claim against the county . . . whether founded upon contract, express or implied, or upon any act or omission of the county' first were required to present the claim to the county's governing board of supervisors. In 1959, following a study conducted under the direction of Professor Van Alstyne of the School of Law of the University of California, Los Angeles, the Law Revision Commission determined that because of the large number and variety of claims statutes then existing under California law, '. . . the law of this State governing the presentation of claims against governmental entities is unduly complex, inconsistent, ambiguous and difficult to find, that it is productive of much litigation and that it often results in the barring of just claims.' (Recommendation and Study Relating to the Presentation of Claims Against Public Entities (Jan. 1959) 2 Cal. Law Revision Com. Rep. (1959) p. A-7.) The commission recommended a complete overhaul of the claims statutes. As a result of Professor Van Alstyne's study and the commission's recommendation, the Legislature repealed at least 174 statutes providing separate claims procedures for various local entities, replacing them with a single, uniform law set forth at Government Code former section 700 et seq. (See Recommendation Relating to Sovereign Immunity (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 1007.) [¶] One of the problems identified by Professor Van Alstyne was that the various claims statutes were wildly inconsistent as to the type of action they were intended to govern. Professor Van Alstyne noted that Government Code former section 29704, mentioned above, exemplified the broadest form of claims statute. Other statutes were drawn more narrowly, and 'have been construed correspondingly. Provisions which require presentation of all claims "for damages," for example, do not apply to claims for money due on contract but do embrace breach of contract claims and all types of claims founded in tort whether intentional or negligent . . . . On the other hand, a claims provision which is expressly or impliedly limited to claims for money precludes the necessity of presenting a claim as a prerequisite to injunctive or declaratory relief, but does embrace all forms of monetary demands including pension claims and all types of tort and contract claims.' (Recommendation and Study Relating to the Presentation of Claims Against Public Entities (Jan. 1959) 2 Cal. Law Revision Com. Rep. (1959) p. A-82-A-83, fns. omitted.) With the adoption of the uniform law, Government Code former section 29704 was repealed. In place of it and of the various other repealed claims statutes, the Legislature adopted Government Code former section 710, providing that, with certain carefully

specified exceptions, 'No suit for money or damages may be brought against a local public entity . . . until a written claim therefor has been presented to the entity in conformity with the provisions of this article . . .' and has been rejected in whole or in part. Section 710 was repealed in 1963 and replaced, in part, with Government Code section 945.4. *In light of the language of Government Code former section 29704, and of Professor Van Alstyne's comments, there can be no doubt but that the Legislature intended the claims presentation statutes to apply not only to tort claims, but also to claims for breach of contract and claims for money due under a contract. In short, unless specifically excepted, any action for money or damages, whether sounding in tort, contract or some other theory, may not be maintained until a claim has been filed with the relevant public entity and either the public entity acts on it or it is deemed to have been denied by operation of law." (Alliance Financial, supra,* 64 Cal.App.4th at pp. 641-642, some italics added.)

One of the decisions relied upon by *Alliance Financial* is *Loehr* v. *Ventura County Community College Dist., supra,* 147 Cal.App.3d 1071. (*Alliance Financial* v. *City and County of San Francisco, supra,* 64 Cal.App.4th at p. 641.) In *Loehr,* after being discharged from his position as superintendent and chief executive officer of a community college district, the plaintiff filed suit, seeking damages for wrongful termination and reinstatement. Defendants demurred on the ground, inter alia, plaintiff had failed to comply with the claims statutes. The lower court sustained the demurrers without leave to amend and dismissed the action. (147 Cal.App.3d at p. 1076.)

The appellate court affirmed, stating: "By its own terms, the filing requirements of the statute extend only to actions for 'money or damages.' (Gov. Code, §§ 905, 905.2.) Although this term is not defined in the act, it is comprehensive in scope and includes tort claims arising out of negligence, nuisance, breach of statutory duties, and intentional wrongs. (See Van Alstyne, Cal. Govt. Tort Liability Practice (Cont.Ed.Bar 1980) §§ 5.7, 5.13, and cases cited therein.) *Actions for breach of contract also fall within the scope of claims for 'money or damages.'* (See *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670 [138 Cal.Rptr. 338]; *Voth* v. *Wasco Public Util. Dist.* (1976) 56 Cal.App.3d 353 [128 Cal.Rptr. 608]; *Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626 [86 Cal.Rptr. 198].)" (*Loehr* v. *Ventura County Community College Dist., supra,* 147 Cal.App.3d at p. 1079, italics added; accord, *Dilts* v. *Cantua Elementary School Dist.* (1987) 189 Cal.App.3d 27, 31 [234 Cal.Rptr. 612].)

In addition to *Loehr,* the *Alliance Financial* decision was guided by *Schaefer Dixon Associates* v. *Santa Ana Watershed Project Authority* (1996)

48 Cal.App.4th 524 [55 Cal.Rptr.2d 698]. (*Alliance Financial* v. *City and County of San Francisco, supra*, 64 Cal.App.4th at p. 641.) That case involved a contract dispute between a contractor and a public entity. (*Schaefer Dixon Associates, supra*, at p. 526.) The lower court granted summary judgment against the contractor for its failure to comply with the claims statutes before filing suit. (*Ibid.*) The judgment was affirmed on the ground a letter the contractor had written to the general manager of the public entity was not a claim within the meaning of the claims statutes. (*Id.*, at p. 533.) *Schaefer* simply assumes the claims statutes apply to contract claims and it contains no discussion of that issue. ▪ Of course, a decision is not authority for a proposition not considered in the court's opinion. (*People* v. *Myers* (1987) 43 Cal.3d 250, 265, fn. 5 [233 Cal.Rptr. 264, 729 P.2d 698].)

### 3. *Decisions restricting claims statutes to tort claims.*

▪ In *National Automobile & Cas. Ins. Co.* v. *Pitchess* (1973) 35 Cal.App.3d 62 [110 Cal.Rptr. 649] (*Pitchess*), the lower court granted judgment in favor of the plaintiff in an action against the county sheriff and the county seeking recovery of funds received by the sheriff pursuant to an attachment and paid over to the wrong party through error in the sheriff's office. (*Id.*, at pp. 63-64.) The appellate court affirmed, holding, inter alia, "when ... the sheriff refused to satisfy plaintiff's demand on him, plaintiff had a cause of action which was either in equity or in contract, not in tort. As such, under the provisions of section 814 of the Government Code, plaintiff was not required to comply with the 100-day claim provision set forth in section 911.2 of the Government Code." (*Id.*, at p. 65.)

We note that section 814, cited in *Pitchess, supra*, 35 Cal.App.3d at page 65, states: "*Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee.*" (§ 814, italics added.) However, section 814 is found within *part 2* of division 3.6, which part pertains to the *tort* liability of public entities and public employees, whereas the claims presentation requirements are set forth in *part 3* of division 3.6, at section 900 et seq. Merely because the substantive liability provisions in part 2 of the statutory scheme do not affect liability based on contract does not support the conclusion the procedural claims presentation requirements of part 3 do not apply to contract-based claims. A leading treatise has made the same observation: "Although nothing in the substantive provisions of the Tort Claims Act 'affects liability based on contract' (Govt. C § 814), a plaintiff seeking to recover money or damages for a breach of contract must timely comply with the claim

presentation requirements of the Tort Claims Act unless an exception applies. [Citations.]" (Cal. Government Tort Liability Practice, *supra*, § 2.108, p. 200, see also § 2.7, p. 76.)

Similar to *Pitchess* in its rationale, *Harris* v. *State Personnel Bd.* (1985) 170 Cal.App.3d 639 [216 Cal.Rptr. 274],[3] overturned the lower court's decision that an employee's failure to present a claim to the State Board of Control barred his claim. (170 Cal.App.3d at p. 642.) *Harris* stated: "The Tort Claims Act has abolished common law tort liability with respect to government and replaced it with a wholly statutory scheme. The shield provided government expressly excludes actions arising on contract. (See Gov. Code, § 814 . . . .) Appellant's claim is for wages he alleges are owed to him by his employer arising out of his *contract* of employment. He seeks no damages for *tortious* conduct. He seeks payment for services he was to have rendered and wages he would have earned but for his involuntary discharge and the long delay before reinstatement. His claim is not one for 'money or damages' to which the notice-of-claim provisions of the act are applicable." (*Id.*, at p. 643, italics added.)

Again, we make the observation that the pervasive and indiscriminate use of the term Tort Claims Act to refer to the diverse topics covered by section 810 et seq. has produced confusion concerning the applicability of section 900 et seq. to matters sounding in contract.

4. *With respect to the claims presentation statutes at section 900 et seq., Government Claims Act is a more appropriate term than Tort Claims Act.*

For the reasons already discussed, we believe the tort/contract dichotomy does not apply to the claims statutes. (§ 900 et seq.) Although section 814, pertaining to government tort liability, makes it clear that nothing in "part [two] affects liability based on contract," the procedural requirements of the government claims statutes, at part three (§ 900 et seq.) are not limited to tort claims. They extend also to claims sounding in contract.

Here, in denying the City's motion for summary judgment, the trial court, engaging in the all too common assumption the claims presentation statutes do not apply to contract claims, stated: "Where cases are in conflict in the courts of appeal, the trial court is free to follow those cases which appeal to the court as most accurately reflecting legislative intent. This Court is

---

[3]*Harris* was disapproved on other grounds in *Coleman* v. *Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1123, fn. 8 [278 Cal.Rptr. 346, 805 P.2d 300].

persuaded that the legislature did not intend, *in enacting the Tort Claims Act*, to extend its application to actions based on contract." (Italics added.)

Similarly, Baines contends on appeal: "The best evidence, perhaps, of the legislature's intent on this issue is the commonly known *title* 'California Tort Claims Act.' . . . There is a reason the word 'Tort' is used." (Italics added.)

Such arguments do not withstand even minimal scrutiny. As discussed, the Legislature did not give the statutory scheme a short title which might have alleviated confusion. The unfortunate term Tort Claims Act in the legal literature used without differentiation ascribes to the statutory scheme an intent which the Legislature lacked. The unambiguous language of section 900 et seq., particularly section 910.2, sections clearly separate and distinct from other aspect of the statutory scheme found at section 810 et seq., establishes that the Legislature expressly included contract claims within the statutory claims presentation procedures. It is recommended that with reference to section 900 et seq., the bench and bar use the term "Government Claims Act" instead of Tort Claims Act to describe more accurately the scope of the claims presentation statutes.

However, given the ongoing confusion in this area, the broad importance of the question presented and the likelihood this issue will recur, we respectfully invite either the Legislature to declare its intent or the Supreme Court to clarify the matter at the earliest opportunity.

5. *Remaining issues to be examined by trial court on remand.*

The trial court denied the City's motion for summary judgment on the ground the claims statutes do not apply to contract claims. Therefore, the trial court did not address Baines's contentions that it substantially complied with the claims statutes and that the City should be estopped to assert the claims statutes. Baines also argues the claims statute was equitably tolled while the parties litigated its applicability to contract actions.

In view of our conclusion the claims statutes do apply to contract actions, Baines's contentions now are pertinent. However, it would be inappropriate for us, as a reviewing court, to address these issues in the first instance. Therefore, we reverse the judgment and remand to the trial court with directions to consider whether Baines substantially complied with the claims statutes or whether estoppel or equitable tolling are applicable. In the event the trial court rejects Baines's arguments, it shall enter judgment in favor of

the City. In the event the trial court rules in favor of Baines, it shall reinstate the original judgment.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. Each party to bear respective costs on appeal.

Kitching, J., and Aldrich, J., concurred.