[Civ. No. 14817.   First Dist., Div. Two.   June 11, 1952.]

STEPHEN BERTONE, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Allen Spivock for Appellant.

Dion R. Holm, City Attorney, A. Dal Thomson, Public Utilities Counsel and Jack G. McBride, Deputy City Attorney, for Respondents.

GOODELL, J.—Appellant sued on a writing dated April 4, 1946, claiming a conversion by respondents of $5,000 of his money. He was awarded a judgment for $1,019.33, and after the denial of a new trial took this appeal.

Appellant owned three apartment houses in San Francisco, one at 2459 Larkin Street of 12 apartments, one at 626 Pine Street of 30 apartments and a store, and one at 665 Pine Street of 40 apartments.

On March 5, 1946, the San Francisco Water Department wrote him as follows:

"We are herewith rendering bills covering under-charges for water supplied through the services to the premises located at 2459 Larkin Street for a period of six years and to the premises located at 626 Pine Street and 665 Pine Street for periods of seven years each.

"We have conclusive evidence that the meters on these services were not properly functioning during the specified periods of time.

"Your remittance in accordance with our Rules and Regulations will be appreciated."

The three bills totalled $5,258.40.

On March 21 three final notices were served, reciting appellant's 15-day delinquency and stating that unless the bills were paid within three days water service would be discontinued. Appellant on April 4 deposited with the department

$5,000 in currency and the department drew up in its own language the following writing on which this litigation is based:

"Received from S. Bertone, . . . the sum of $5,000.00 to be deposited by the Water Department in a Trust Fund as a deposit to guarantee payment of unpaid charges for water delivered at the undernoted premises for the accounts of said S. Bertone, during the periods indicated.

2459 Larkin Street
For years 1940 to 1945 inclusive
626 Pine Street
For years 1939 to 1945 inclusive
665 Pine Street
For years 1939 to 1945 inclusive

Said unpaid charges are for water claimed by the Water Department to have been delivered by it to the several premises, during the periods indicated, in excess of the amounts registered by the several meters installed at the respective premises.

"The Department having rendered bills for the excess deliveries claimed to have been made by it in the amount of $5258.40 and the said consumer S. Bertone having protested the accuracy of the estimates on which said claims of the Department were based;

"It is mutually understood and agreed that said claims will be further reviewed, and that when the amount of such excess deliveries, if any, have been finally determined in the light of all factors involved, by agreement, negotiation or court action, the charges for such excess delivery as so determined shall be deducted from the deposit, any balance remaining after such deduction to be refunded to the depositor. Should the deposit not be sufficient to meet the full amount of the bill for the unpaid excess deliveries the depositor agrees to pay to the department the balance of such unpaid claims.

San Francisco Water Department
Joseph Conway
Manager, Water Sales Division

I hereby accept the conditions
outlined in this receipt
S. Bertone."

Shortly thereafter a recheck was made by the department, resulting in revised bills for the same periods. The bill for

the Larkin Street property was reduced from $902 to $406.20, that for 626 Pine from $3837.60 to $3056.73, and that for 665 Pine from $518.80 to $517.74, a total of $3,980.67 instead of $5,258.40, and on May 23, the department wrote appellant to this effect and offered to return $1,019.33, the difference between $5,000 and $3,980.67, if he accepted the adjustment. No reply having been received, the department wrote appellant on July 29 saying "we are holding balance of deposit amounting to $1,019.33" pending acceptance, and asking for a reply. On September 10, the department again wrote, referring to the unanswered letters of May 23 and July 29, and saying:

"*It is our intention to conclude this matter* and therefore, unless you present a valid objection within fifteen days, *we propose to apply your deposit*, in so far as necessary, *to liquidate our claim* of $3,980.67 presented to you on May 23, 1946. A check for the balance of $1,019.33 will be forwarded to you promptly thereafter." (Emphasis added.)

This letter showed an intent already formed by the department to take the matter into its own hands.

On September 20 Attorney Louis Ferrari wrote the department as follows:

"This is in reply to your letter of September 10, 1946, addressed to Mr. S. Bertone, 3030 Larkin Street.

"Mr. Bertone has employed me to look after this claim against him, and I am writing in his behalf to protest against any action on your part in and by which you apply or attempt to apply any portion of the sum of $5000.00 deposited by Mr. Bertone with you, toward any alleged claim based upon your contention that the respective meters in the above named premises had not been properly functioning. It is the contention of Mr. Bertone that the meters in the above premises have been functioning properly at all times; that the fluctuations in the amounts of water used have been due to leakage.

"Mr. Bertone would like to have a hearing on this matter, and would like an opportunity to present evidence to sustain his claim that he does not owe the San Francisco Water Department any amount whatsoever, and that he is entitled to have redelivered to him the entire sum of $5000.00.

"We would be glad to have this hearing fixed at a time and place to be designated by you. However, the writer personally asks that the hearing be set for some time in October, as he contemplates being out of town during the coming week."

The record is silent as to the requested hearing. Needless to say a hearing was within the contemplation of the writing which provided for negotiation and agreement.

The last letter, dated October 22, 1946, reads as follows:

"In accordance with our letter of September 10, 1946, and with the approval of our counsel, we have credited your account for water supply with the following amounts which, as outlined in our letter of May 23, 1946, represent minimum back charges for water delivered but not properly recorded on the several meters:

| | |
|---|---|
| 2459 Larkin Street | $ 406.20 |
| 626 Pine Street | 3,056.73 |
| 665 Pine Street | 517.74 |
| Total | $3,980.67 |

"These credits were made by deducting the necessary amounts from the sum of $5,000.00 which you deposited with us on April 4, 1946.

"The remaining balance of $1,019.33 is refunded to you herewith by our Check Number 8715 dated October 18, 1946."

It was accompanied by a check for $1,019.33 (bearing on its face "Not valid after sixty days from date") which was never cashed. This letter showed that the department had carried out its expressed intent to take the matter into its own hands.

The writing of April 4 acknowledges receipt of $5,000 "to be deposited by the Water Department in a Trust Fund as a deposit to guarantee payment of unpaid charges for water delivered." The department's manager of water sales when asked on cross-examination: "Now, this $5000 . . . was put in a trust fund?" answered "Yes." And when asked: "Has the City taken any of that money and put it into the regular Water Department funds?" frankly answered "Yes, we have."

Appellant contends that when this transfer was made without a determination by "agreement, negotiation or court action," of what, if anything, was owing, the respondents appropriated his $5,000 to their own use.

The following allegations of the complaint are admitted by the answer: that plaintiff was the owner of the three buildings and shortly before March 5, 1946 the department informed him of its recent discovery that the meters therein had not been functioning properly during the past six or seven years, so that water was supplied in excess of what was registered; that on March 5 the three bills were submitted to plain-

tiff aggregating $5,258.40; that plaintiff objected to these claims and denied that the meters were not properly functioning; that he owed nothing and had never interfered or tampered with the meters; that on March 21 the department served a written notice that unless plaintiff paid the $5,258.40 within three days the water service to all three buildings would be discontinued; that to prevent such discontinuance plaintiff under protest deposited $5,000 in cash with the department and received the writing which was made part of the complaint; that on May 23 defendants submitted the three revised bills totalling $3,980.67 and offered to return the difference of $1,019.33 in full settlement; that no court action had been taken.

One of plaintiff's allegations was that he had continually refused to pay anything on the bills; this was denied by the answer. And in alleging the deposit of $5,000 under compulsion plaintiff stated that it had been placed in a trust fund; the answer denied that it "now is, or ever was a trust fund." Plaintiff also alleged that he had rejected the $1,019.33; this was denied. One of the principal allegations was "That, up to the present time, the above dispute over said sum of $5,-000.00 has not 'been finally determined' 'by agreement, negotiation or court action' "; this was denied.

In the second count plaintiff alleged that within four years last past defendants became indebted to him in the sum of $5,000 upon the written agreement for money had and received by said defendants in a "Trust Fund" for the use and benefit of plaintiff. This was denied.

It will thus be seen that the only substantial issues raised by denials on the first count were (a) whether or not the $5,000 was a trust fund and (b) whether or not the dispute had been determined in the manner prescribed in the writing.

The answer to the second count in addition to denying that the $5,000 was owing to plaintiff, pleaded: "In this connection defendant alleges that the total sum of $3,980.67 was due, owing and unpaid from plaintiff to defendant with respect to the supplying of water by defendant to plaintiff and that said sum has been deducted by defendant out of said deposit of $5,000.00 . . . In this connection defendant further alleges that the sum of $1,019.33 was, on or about the 11th day of September, 1946, tendered by defendant to plaintiff, being the difference of said sum of $5,000.00 and said sum of $3,980.67."

A careful reading of this allegation shows that it states

no defense for this reason: while it alleges that the $3,980.67 "has been deducted by defendant out of said deposit of $5,-000.00" it does not allege that such deduction was made after a final determination "by agreement, negotiation or court action." Without such allegation it amounts to nothing but a reassertion of the department's claim that it had the right—agreement or no agreement, trust fund or no trust fund—to determine for itself that this $3,980.67 was owing and that, having such right, and having so determined ex parte, it had deducted $3,980.67 from plaintiff's $5,000, which had been deposited only as security. Indeed the language itself "that said sum has been deducted by defendant out of said deposit of $5,000.00" is an admission of record that the integrity of the trust fund had been destroyed by the department and the money therein appropriated by it.

This brings us to the findings. Although the answer expressly denied that the $5,000 was a trust fund, there is no finding on that issue. The findings are silent also on the important issue whether or not there had been a final determination by agreement or negotiation. ▇▇ "The purpose of findings 'is to answer the questions put by the pleadings'" (*Moore* v. *Craig*, 5 Cal.App.2d 283, 285 [42 P.2d 647]; *Frascona* v. *Los Angeles Ry. Corp.*, 48 Cal.App. 135, 138 [191 P. 968]). See 24 California Jurisprudence page 940 section 186. Had the court touched at all on these issues, it must have necessarily found that the money was *received in trust,* and to be *held in trust* until a settlement had been reached by "agreement, negotiation or court action" and that no such settlement had been reached. It could not have found otherwise.

The court found that "the plaintiff was to repair all leaks on the three premises and defendant Water Department would reestimate the amount of water consumed under such conditions." If this was intended as a finding that the writing so provided, it is incorrect. There was no such provision.

▇▇ The findings quote at length the department's rules, but such findings are on probative and not ultimate facts, hence wholly unnecessary. (24 Cal.Jur. p. 968, § 203.)

The findings conclude: "That on May 23, 1946, defendant Water Department submitted revised bills claiming $406.20 for the premises at 2459 Larkin Street, $3,056.73 for the premises at 626 Pine Street, and $517.74 for the premises at 665 Pine Street, making a total of $3,980.87, and sent plaintiff a check for refund in the amount of $1,019.33, which check

plaintiff did not cash." ▮ Such finding was wholly unnecessary since there was no issue thereon, the plaintiff's allegations to that effect having been admitted by the answer. (24 Cal.Jur. p. 982, § 211.) *Neither that nor any other finding determines that appellant ever owed the department $3,980.67, or any part of it.* ▮ The allegation in the answer "that the total sum of $3,980.67 was due, owing and unpaid from plaintiff to defendant" was "deemed controverted" (Code Civ. Proc., § 462). ▮ "Under the system of express findings now provided for, full findings, unless waived, are required on all material issues raised by the pleadings and evidence" (24 Cal.Jur. pp. 935-936, § 183). "The requirement applies not only to issues raised by denials of the allegations of a complaint, but to issues raised upon affirmative defenses in the answer . . ." (24 Cal.Jur. p. 938, § 183).

The court failed to find on several minor issues namely, whether the department "did and does now supply water for profit, to the people" of San Francisco, and whether appellant had "continually refused to pay anything" on the back bills.

On the second count there was no finding or conclusion on plaintiff's allegation, denied by defendants: "That within four years last past . . . defendants became indebted to plaintiff in the sum of $5,000.00 upon a written instrument . . . for money had and received by said defendants in a 'Trust Fund' for the use and benefit of plaintiff."

As separate defenses the defendants pleaded that plaintiff's action was barred (a) by section 339, subdivision 1, Code of Civil Procedure; (b) by laches, and (c) by section 87 of the San Francisco charter. There were no findings or conclusions on any of those issues.

▮ The writing of April 4 contained the conditions, clearly expressed, upon which appellant's $5,000 could be used, namely, only after a *final determination* of what, if anything, was owing on the back bills, by *"agreement, negotiation or court action."*

When, on September 20, 1946, appellant through his attorney asked for a hearing it should have been accorded since a hearing affords an opportunity for negotiation. No hearing was held. There was then clearly an impasse, and apparently nothing was left but court action. Instead of resorting to that, as the writing expressly provided, respondents took the matter into their own hands and transferred the money to their

general funds. This was a clear departure from the terms of the agreement and an appropriation of appellant's $5,000. Granting that a deadlock had been reached as far as negotiation and agreement were concerned, the writing still called for court action. Had respondents sued, the burden would have been theirs to prove a stale claim dating back six or seven years, with no rule of the department providing for or justifying any such unusual and belated action, and with the statute of limitations confronting them as well. Although this outlook might not have appeared attractive to the department, appellant still had the right to invoke court action. But respondents by their unilateral action had destroyed the trust fund and absorbed it as their own. Appellant was left with no alternative but an action for the misappropriation.

Respondents argue, without supplying any authority, that the designation of a trust fund was "purely an accounting procedure to designate and separate the money from the general funds of the Water Department." The department's situation is that of one who obtains (in this instance by compulsion) a sum of money belonging to another under an express declaration of trust and then takes it, after sitting in judgment on his own case and deciding that it is his own money. The court's language in *Kreutz* v. *Livingston*, 15 Cal. 344, 347, exactly fits this case: "The defendants occupied toward the plaintiff the position of trustees, and the money sued for was received in that character . . . the defendants cannot now repudiate it, and retain money *which they would not otherwise have received . . .*" (Emphasis added). Respondents' situation was essentially the same as that of a chattel mortgagee who sells or disposes of the mortgaged chattel *otherwise than in accordance with the conditions of the mortgage*. In such case there is an unlawful assumption of dominion over the property in defiance of the owner's rights, amounting to a wrongful conversion and effecting an extinguishment of the lien (*Blodgett* v. *Rheinschild*, 56 Cal. App. 728, 738 [206 P. 674] ; *Metheny* v. *Davis*, 107 Cal.App. 137, 139 [290 P. 91] ; *Kee* v. *Becker*, 54 Cal.App.2d 466, 470-471 [129 P.2d 159]). The two situations are analogous. See, also, *Lowe* v. *Ozmun*, 3 Cal.App. 387, 394 [86 P. 729], where a pledgee asserted his ownership of the pledged property.

Respondents argue, further, that "where a claim is made upon a consumer for the furnishing of water and the consumer disputes the claim and the supplier indicates its intent to discontinue the supply, the right of the consumer is to pay

the disputed amount under protest and thereafter have his action for the recovery of the excess.'' That, of course, is true, but these parties adopted a different expedient by drawing an agreement which prescribed explicitly how the undercharges, if any, were to be determined. It by no means provided for *payment* under protest of the disputed amount. The $5,000 was deposited merely as a ''guarantee'' as the respondents themselves characterized it.

■ Respondents assert, finally, that the writing effected an accord and satisfaction without even advancing an argument as to why this is so. The writing has none of the characteristics of an accord and satisfaction.

The figure of $1,019.33 for which judgment was awarded, was arrived at by deducting the $3,980.67 as *determined* by respondents, from the $5,000. By reaching that result sanction was erroneously given to respondents' misappropriation of appellant's money. Moreover these figures, as shown above, are afforded no support whatever by the findings.

■ Defendants pleaded that plaintiff's causes of action were barred by section 87 of the charter (and the court made no finding thereon). Respondents now argue that section 87 ''requires that all claims for damages against the city and county must be presented to the controller within 60 days after the occurrence for which it is claimed the damages have arisen'' citing *Cathey* v. *City & County of San Francisco,* 37 Cal.App.2d 575 [99 P.2d 1109]. Appellant answers that this claim is not one for damages but is based on the writing of April 4. We are satisfied that this is a sufficient answer, but, in addition to that, the action is one for money had and received (see *Ehrman* v. *Rosenthal,* 117 Cal. 491, 496-497 [49 P. 460], citing *inter alia Kreutz* v. *Livingston,* 15 Cal. 344, *supra*). Such action lies, as said in the Kreutz case, where ''the defendants are in possession of money which in equity and conscience they are bound to pay over.''

The judgment is reversed.

Nourse, P. J., and Jones, J. pro tem., concurred.

A petition for a rehearing was denied July 11, 1952.