[No. D031358. Fourth Dist., Div. One. Nov. 3, 1999.]

HOYT E. HART II, Plaintiff and Appellant, v.
COUNTY OF ALAMEDA et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Anthony T. Ditty, Anthony T. Ditty; Wirtz & Associates and Richard M. Wirtz for Plaintiff and Appellant.

John J. Sansone, County Counsel, Diane Bardsley, Chief Deputy County Counsel, and C. Ellen Pilsecker, Deputy County Counsel, for Defendant and Respondent County of San Diego.

Richard E. Winnie, County Counsel, and Kristen J. Thorsness, Deputy County Counsel, for Defendant and Respondent County of Alameda.

Victor J. Westman, County Counsel, and Arthur W. Walenta, Assistant County Counsel, for Defendant and Respondent Contra Costa County.

B. C. Barmann, Sr., County Counsel, and John R. Irby, Deputy County Counsel, for Defendant and Respondent County of Kern.

Lloyd W. Pellman, County Counsel, and Derrick M. Au, Deputy County Counsel, for Defendant and Respondent County of Los Angeles.

Steven R. Sanders, County Counsel, and Shirley L. Murphy, Deputy County Counsel, for Defendant and Respondent County of San Benito.

Louise H. Renne, City Attorney, Burk E. Delventhal and David A. Greenburg, Deputy City Attorneys, for Defendant and Respondent City and County of San Francisco.

James P. Botz, County Counsel, and Jeffrey L. Berk, Deputy County Counsel, for Defendant and Respondent County of Sonoma.

Louis B. Green, County Counsel, and Vicki J. Finucane, Deputy County Counsel, for Defendant and Respondent El Dorado County.

Laurence M. Watson, County Counsel, Thomas C. Agin, Assistant County Counsel, and Karyn Driessen, Deputy County Counsel, for Defendant and Respondent County of Orange.

William C. Katzenstein, County Counsel, and Robert M. Pepper, Principal Deputy County Counsel, for Defendant and Respondent County of Riverside.

Charles R. Mack, County Counsel, and Steven M. Basha, Assistant County Counsel, for Defendant and Respondent Yolo County.

Phillip S. Cronin, County Counsel, and J. Wesley Merritt, Chief Deputy County Counsel, for Defendant and Respondent Fresno County.

Marshall S. Rudolph, County Counsel; and Justin N. Tierney, for Defendant and Respondent County of Mono.

Robert A. Ryan, Jr., County Counsel, and Kathleen A. O'Connor, Deputy County Counsel, for Defendant and Respondent County of Sacramento.

Thomas F. Casey III, County Counsel, and D. Penny Bennett, Deputy County Counsel, for Defendant and Respondent San Mateo County.

Ann Miller Ravel, County Counsel, and Laurie Faulkner, Deputy County Counsel, for Defendant and Respondent County of Santa Clara.

Patrick K. Faulkner, County Counsel, and Renee Giacomini Brewer, Deputy County Counsel, for Defendant and Respondent County of Marin.

Kathleen Bales-Lange, County Counsel, and James G. Line, Deputy County Counsel, for Defendant and Respondent County of Tulare.

Thomas M. Fries, County Counsel, and Allan Lenefsky, Deputy County Counsel, for Defendant and Respondent County of Imperial.

H. Peter Klein, County Counsel, and Jeanine B. Nadel, Deputy County Counsel, for Defendant and Respondent County of Mendocino.

Robert Shulman, County Counsel, and Julia Coleman, Deputy County Counsel, for Defendant and Respondent County of Plumas.

Alan Marks, County Counsel, and Michael A. Sachs, Chief Deputy County Counsel, for Defendant and Respondent County of San Bernardino.

Daniel G. Montgomery, County Counsel, for Defendant and Respondent County of Yuba.

Mitchell, Brisso, Delaney & Vrieze and Nancy K. Delaney for Defendant and Respondent County of Humboldt.

**OPINION**

**HALLER, J.**—Hoyt E. Hart II brought this action on behalf of himself and others similarly situated against 25 California counties (Counties), seeking the return of unused jury fee deposits. The trial court sustained the Counties' demurrers without leave to amend. Hart appeals. We affirm.

FACTS

A civil litigant requesting a jury trial must deposit with the court clerk an amount necessary to pay the average mileage and fees of 20 jurors for 1 day.

(Code Civ. Proc., § 631.) The deposit must be filed 25 days before the date set for trial, or the litigant waives the right to a jury trial. (*Ibid.*)

If a jury trial is held, the deposit is used for its intended purpose. But what if a jury trial does not occur because the case is disposed of without impaneling a jury? Generally, a depositor is entitled to the return of his or her deposit. However, Code of Civil Procedure former section 631.3 set forth two exceptions to this rule: A jury fee deposit "shall revert to the county and be deposited in the general fund of the county" if: (1) "the court finds there has been insufficient time to notify the jurors that the trial would not proceed at the time set"; or (2) "[the] jury fees deposited . . . have not been refunded within three years after the action was dismissed or a final judgment rendered therein because the depositor thereof cannot be found."[1] Although section 631.3 has since been amended, this former version of the statute applied during the relevant times.

In his second amended complaint, Hart set forth allegations on behalf of two groups of plaintiffs. As to the first group, Hart alleged he deposited jury fees in superior courts in San Diego and Los Angeles Counties, and received an assignment of the rights of persons who made jury fee deposits in Los Angeles, Sonoma, and Riverside Counties. Hart alleged the jury fees deposited by the assignors "have . . . reverted to the general funds" of the counties; none of the deposits have been returned; and the Counties made no efforts to " 'find' the depositors nor to refund the money to the address located on the jury deposit notice or in the court file."

As to the second group, Hart alleged he brought the action on behalf of a class of persons: (1) who deposited jury fees with the courts of the defendant Counties; (2) whose jury fees did not revert to the general funds under the first listed circumstance of section 631.3 (the inability to notify the jury the action would not go forward); (3) whose jury fees were not refunded within three years after the class member's underlying action was dismissed or a final judgment rendered; and (4) whose jury fee deposits remain with the

---

[1]Former section 631.3 read: "when a party to the litigation has deposited jury fees . . . and the case is settled or a continuance is granted on motion of the party depositing said jury fees, none of said deposit shall be refunded if the court finds there has been insufficient time to notify the jurors that the trial would not proceed at the time set. If said jury fees so deposited are not refunded for the reasons herein specified, or if jury fees deposited with the judge or clerk have not been refunded within three years after the action was dismissed or a final judgment rendered therein because the depositor thereof cannot be found, said fees shall revert to the county and be deposited in the general fund of the county. All jury fees and mileage fees that may accrue by reason of a juror serving on more than one case in the same day shall revert to the county and be deposited in the general fund of the county." (Stats. 1963, ch. 678, § 1, p. 1683.)

All further references to section 631.3 will be to this former version of section 631.3. All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

Counties either in the form of deposits presently held or deposits converted by the Counties from June 6, 1990, until June 6, 1997.

The second amended complaint asserted five causes of action: (1) money had and received; (2) constructive trust/breach of fiduciary duty; (3) conversion; (4) unjust enrichment; and (5) "declaratory relief and unlawful taking." In his prayer for relief, Hart sought "the return and payment of the . . . Class Members' jury fee deposits," and an order declaring that the Counties "hold all unused jury fee deposits in trust for plaintiffs." Hart additionally requested declaratory relief.

The trial court concluded Hart was barred from recovery under any theory because he did not, and could not, allege: (1) "a prior demand for refund"; (2) "breach of a specific mandatory statutory duty to refund, locate depositors and/or notify depositors"; and (3) compliance with the Government Claims Act (Gov. Code, § 900 et seq.).[2]

## DISCUSSION

### I. *Summary of Conclusions*

The central thrust of Hart's second amended complaint is that he and the class members are entitled to a return of their jury deposits because the Counties breached a duty to make reasonable efforts to notify the depositors before the jury fees reverted to the Counties' general funds. The Counties deny they owed a duty to provide such notice.

We do not ultimately reach the question of the existence of this alleged notification duty because Hart's claims fail on several other grounds: (1) Hart has no standing to bring this action as against 22 of the 25 respondent Counties; (2) with respect to the funds that remain as deposits with the courts, the complaint does not allege Hart or any of the class members asked for the return of their deposits; and (3) with respect to the "reverted" funds, Hart failed to allege compliance with the Government Claims Act. We note further that because the Legislature amended section 631.3 in 1998 to specifically require the depositor to request a return of a jury deposit within 20 days of the disposition of the action, our conclusion on the statutory and constitutional questions pertaining to notification would have no continuing applicability.

[2]Although this statute is more commonly known as the California Tort Claims Act, we agree with those courts that have suggested this label is misleading and have instead adopted the more accurate Government Claims Act identification. (See *Baines Pickwick Ltd.* v. *City of Los Angeles* (1999) 72 Cal.App.4th 298 [85 Cal.Rptr.2d 74]; see *post*, at Discussion, pt. VI.A.)

We additionally conclude that Hart's claims fail to the extent he is asking this court to interpret former section 631.3 as imposing a duty on the Counties to return deposits to depositors. There is nothing in section 631.3 providing that the superior courts or counties have an affirmative duty to return a jury deposit within a specified time.

## II. *Standard of Review*

■ " 'Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action. Accordingly we assume that the complaint's properly pleaded material allegations are true and give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context. . . .' " (*People* ex rel. *Lungren* v. *Superior Court* (1996) 14 Cal.4th 294, 300 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) When a trial court sustains a demurrer, "[r]eversible error exists if those facts show entitlement to relief under any possible legal theory." (*Lynch* v. *San Francisco Housing Authority* (1997) 55 Cal.App.4th 527, 531 [65 Cal.Rptr.2d 620].)

Further, when a demurrer is sustained without leave to amend, " '. . . we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse . . . . The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Champion* v. *County of San Diego* (1996) 47 Cal.App.4th 972, 976 [55 Cal.Rptr.2d 205].)

## III. *Standing*

■ Hart alleges he or his assignors made jury deposits in courts in four counties—San Diego, Los Angeles, Sonoma, and Riverside Counties. The remaining 22 respondent Counties contend Hart lacks standing to sue because he did not allege he made a deposit in these counties and therefore he is not the real party in interest. This contention has merit, whether characterized as a "standing" defect or a failure to satisfy the class action "typicality" requirement.

■ Under California's class action statute, when a class action is brought against multiple defendants, the "action may only be maintained against defendants as to whom the class representative has a cause of action. Without such a personal cause of action, the prerequisite that the claims of the representative party be typical of the class cannot be met. If the plaintiff class representative only has a personal cause of action against one defendant and never had any claim of any kind against the remaining defendants,

his claim is not typical of the class. . . . Th[is] . . . requirement is . . . not fulfilled merely because the plaintiffs allege that they suffered injuries similar to those of other parties at the hands of other defendants." (*Baltimore Football Club, Inc.* v. *Superior Court* (1985) 171 Cal.App.3d 352, 359 [215 Cal.Rptr. 323], fn. omitted; accord, *Simons* v. *Horowitz* (1984) 151 Cal.App.3d 834, 845 [199 Cal.Rptr. 134] ["A plaintiff cannot use the procedure of a class action to establish standing to sue a class or group of defendants unless the plaintiff has actually been injured by each of the defendants in the class." (Italics deleted.)].) An exception to this rule applies where the plaintiff alleges the defendants acted under a conspiracy or the defendants are jointly responsible for the plaintiffs' injuries. (See *Baltimore Football Club, Inc.* v. *Superior Court, supra,* 171 Cal.App.3d at p. 359; see also *Daniels* v. *Centennial Group, Inc.* (1993) 16 Cal.App.4th 467, 472-473 [21 Cal.Rptr.2d 1].)

 Hart does not allege he or his assignors deposited jury fees in 22 of the 25 counties, nor does he allege any facts to fit within an exception to the rule requiring a personal cause of action. Thus, he has no standing to sue these 22 counties, and he is not a proper class representative in claims against those counties.

Hart argues this court should provide him an opportunity to amend the complaint to remedy this standing and class action defect. Because we conclude the complaint fails on several other grounds and there is no reasonable possibility that Hart could cure these deficiencies, we do not reach this contention.

### IV. *Two Types of Alleged Jury Fee Deposits*

There are two types of unrefunded jury deposits identified in the complaint: (1) the jury deposits that remain under the control of the superior courts; and (2) the jury deposits that have reverted to the Counties' general funds. In determining whether Hart's second amended complaint states a cause of action, it is important to distinguish between these types of deposits.

 When a party deposits jury fees with the court clerk, the clerk must then deposit those fees with the county treasurer, who is charged with maintaining the deposits and holding them *in trust for the court.* (§ 573; Gov. Code, §§ 27081, 27100.1; see *Fresno Fire Fighters* v. *Jernagan* (1986) 177 Cal.App.3d 403, 407-408 [222 Cal.Rptr. 886].) Although the county treasurer is a county employee who also has control over county funds, when the treasurer initially receives a jury deposit from the court *to hold as a deposit,*

the treasurer is acting as an arm of the court, which in turn holds the deposit for a party litigant. (See *Metropolitan Water Dist.* v. *Adams* (1948) 32 Cal.2d 620, 629-630 [197 P.2d 543].) Until the superior court takes some action to transfer those jury deposit funds to the county, the court is in sole control of the deposits, and the county has no ability to control the funds. (*Ibid.*) Thus, the courts remain in control of the funds that have not reverted to the counties.

Unlike the deposits held by the courts, the funds that have reverted to the Counties are no longer controlled by the courts and are no longer deposits held for a party litigant. Instead, those funds become a part of the county general fund and may be used for any purpose permitted by law.

### V. *Jury Deposits That Remain With Superior Court*

With respect to the deposits that remain with the superior courts, the trial court properly sustained Counties' demurrers because Hart failed to allege he or any class plaintiff asked for a return of the funds.

A depositor must demand the return of a deposit before he or she can prevail on an action to recover the deposit. (Civ. Code, § 1823; see *Burke* v. *Maguire* (1908) 154 Cal. 456, 470 [98 P. 21].) One holding a deposit for the rightful owner "is entitled to an opportunity to comply with his duty [to return the deposit] before being subjected to a suit to recover it,—that is, to a demand for its delivery. *Such demand . . . is a condition precedent to the right to maintain an action to follow the specific property, or recover it, and it must be alleged and proven.*" (*Burke* v. *Maguire, supra,* 154 Cal. at p. 470, italics added.)

These principles apply to each of Hart's claims. With respect to the first four causes of action seeking return of the deposits remaining with the court, neither Hart nor the class plaintiffs may recover these deposits because they never asked for their return. Likewise, Hart cannot obtain the declaratory relief sought in his fifth cause of action because there is no present contro-versy—a demand for the funds has never been made and rejected.

Hart contends this demand requirement is inapplicable because the jury deposits are now in the possession of the Counties. While this argument has merit with respect to the deposits that have *reverted* to the Counties, the argument has no merit with respect to the funds *that remain under the courts' control.* As explained above, although these latter deposits have been trans-ferred to the county treasurer, the treasurer continues to hold these deposits for the court until they revert to the county. (See *Metropolitan Water Dist.* v.

*Adams, supra,* 32 Cal.2d at pp. 629-630.) There is no basis to believe the class plaintiffs would not obtain the return of the deposits remaining in the courts' control if they request a refund. With respect to these deposits, Hart's claims fail.

We stress this requirement of a demand and refusal is not merely a technical one—it goes to the very substance of Hart's claim. Hart is alleging that he and the class members deposited funds into the superior courts, *some of which are still presently held as deposits.* The class plaintiffs claiming a right to these deposits must first show they asked for the return of their money and that this request was refused. Otherwise, there is no dispute for the court to resolve.

## VI. *Deposits That Have Reverted to the Counties' General Funds*

 With respect to the deposits that have allegedly reverted to the Counties' general funds, there was no need to make a demand because those funds are no longer being held for the depositors. A plaintiff is not required to demand the return of funds where the defendant is holding the property under a claim of right. (See *Grosso* v. *Monfalocone, Inc.* (1936) 13 Cal.App.2d 405, 410 [56 P.2d 1266].) But Hart's claims relating to these reverted funds were properly sustained on another basis—Hart failed to (and has implicitly admitted he cannot) allege compliance with the Government Claims Act (Claims Act).

We explain this conclusion first with respect to the monetary relief claims and then with respect to the claims for declaratory relief.

### A. *Claims Other Than Declaratory Relief*

 Under the Claims Act, no suit for "money or damages" may be brought against a public entity until a written claim has been presented to the public entity and the claim either has been acted upon or is deemed to have been rejected. (Gov. Code, §§ 905, 945.4.) A suit for "money or damages" includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in " 'tort, contract or some other theory.' " (*Baines Pickwick Ltd.* v. *City of Los Angeles, supra,* 72 Cal.App.4th at p. 307, italics omitted; *Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1079 [195 Cal.Rptr. 576].)

Although a few courts have stated that the Claims Act applies only to tort claims (see, e.g., *National Automobile & Cas. Ins. Co.* v. *Pitchess* (1973) 35 Cal.App.3d 62 [110 Cal.Rptr. 649]), this view has been criticized. (*Baines*

*Pickwick Ltd.* v. *City of Los Angeles, supra,* 72 Cal.App.4th 298, 305-310; *Alliance Financial* v. *City and County of San Francisco* (1998) 64 Cal.App.4th 635, 641-642 [75 Cal.Rptr.2d 341].) As explained by *Baines Pickwick*, the Legislature intended the claims presentation statutes to broadly apply to " ' "all forms of monetary demands . . . ," ' " and the earlier conclusion that the Claims Act was limited to tort claims was based on the government *immunity* statutes, which contain different statutory language. (*Baines Pickwick Ltd.* v. *City of Los Angeles, supra,* 72 Cal.App.4th at pp. 305-310.) We agree with this latter view and adopt the rule that the Claims Act is not limited to tort actions.

The first four causes of action alleged in Hart's second amended complaint seek monetary relief in the form of the return of the jury deposits. Thus, these actions may not be maintained unless a claim has been filed under the Claims Act.

Hart argues the Claims Act is inapplicable because he and the class members are seeking the return of specific property. He relies on a line of authority holding a party need not comply with the Claims Act when bringing an action to recover personal property impounded by law enforcement officers in connection with an arrest or other law enforcement activity. (See *Holt* v. *Kelly* (1978) 20 Cal.3d 560 [143 Cal.Rptr. 625, 574 P.2d 441]; *Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113 [113 Cal.Rptr. 102, 520 P.2d 726].)

In *Minsky,* Los Angeles police officers arrested Michael Marino, took $7,720 in cash from him and gave him a receipt reflecting this amount. After the disposition of the criminal charges, Marino unsuccessfully made an oral demand for the return of the $7,720. Marino then assigned the claim to plaintiff Minsky. When Minsky sought to recover the money from the 'city, the city denied the claim on the ground the claim was not filed within the time set forth in the Claims Act. Minsky then filed a superior court action seeking "$7,720 damages or such other relief 'as the Court may deem just and proper.' " (11 Cal.3d at p. 118.)

*Minsky* held the Claims Act did not apply to the action because a claim for "specific recovery of property has never been considered a claim for 'money or damages' as used in [the Claims Act]." (*Minsky* v. *City of Los Angeles, supra,* 11 Cal.3d at p. 121.) The court stated that the "government in effect occupies the position of a bailee when it seizes from an arrestee [noncontraband] property" and "[t]he arrestee retains [the] right to eventual specific recovery" of the property. (*Ibid.*) *Minsky* further reasoned it would be inappropriate to apply a claims requirement in a civil action when the

defendant had the right to compel return of the same property in a criminal proceeding without first filing a claim. (*Id.* at p. 123.) The court concluded that the policy of prompt notice underlying the Claims Act is inapplicable to the situation where "an owner seeks the return of private property held as bailee by the government and wrongfully retained." (*Ibid.*)

Four years later, the Supreme Court reached a similar conclusion in a case where a petitioner was attempting to recover personal property (a footlocker) seized in connection with his arrest. (*Holt* v. *Kelly, supra,* 20 Cal.3d 560.) When the petitioner asked for return of the property, the sheriff's department was unable to locate it, although the relevant statutes required the department to have maintained the property. (*Id.* at pp. 563-564.) Finding the case indistinguishable from *Minsky*, the court held the Claims Act was inapplicable "even though some or all of the property may have been dissipated and [the department] may be compelled to respond in damages in lieu of property." (*Id.* at p. 565, fn. omitted.) The court explained the " 'initial exemption of the action from the claims statute is not lost simply because the city takes the further wrongful step of disposing of the bailed property. The city cannot be permitted to invoke the claims statute, originally not available to it, by virtue of a later wrongful dissipation of the property.' " (*Ibid.*)

*Holt* and *Minsky* were followed in *Long* v. *City of Los Angeles* (1998) 68 Cal.App.4th 782 [80 Cal.Rptr.2d 583], where the court held no claim was required in an action against the city to recover birds wrongfully seized by the city, and in *Hibbard* v. *City of Anaheim* (1984) 162 Cal.App.3d 270 [208 Cal.Rptr. 733], where the court held no claim was required in an action for return of property seized under search warrant but subsequently suppressed, or for damages in lieu of the return.

 This case is distinguishable from *Minsky, Holt, Long, and Hibbard.*

The defendants here are not in the position of "bailees" holding the property for the depositors. Instead, the Counties are the recipients of the funds transferred from the courts' accounts to the Counties' general funds. This is an important distinction because there is no basis for concluding the Counties ever had control or possession of the deposits "qua deposits" and of any of the associated records necessary for tracing those funds. While the *Minsky-Holt* "specific property" exception would arguably apply if the plaintiffs brought an action against the superior court seeking return of the deposits still held by the court (assuming there had been a demand and refusal), the claims here are against the Counties, none of which had any participation in the allegedly wrongful conduct or had any ability to control the reversion of the funds.

Under these latter circumstances, the policies underlying the Claims Act apply. The primary purpose of the claims requirement is to "afford prompt notice of claims to governmental entities." (*Minsky* v. *City of Los Angeles*, *supra*, 11 Cal.3d at p. 123.) Timely notice "give[s] the public entity the opportunity to investigate the factual basis of the claim while the evidence is fresh, to settle meritorious cases without litigation, and to consider the fiscal implications of potential liability." (*Barkley* v. *City of Blue Lake* (1996) 47 Cal.App.4th 309, 316 [54 Cal.Rptr.2d 679].)

 Where a criminal defendant seeks the return of property held by law enforcement officers, there is no need to give the public entity a timely opportunity to investigate the factual basis of the claim because the target of the lawsuit is limited to that property legally required to be held for the petitioner. Here, however, Hart is seeking funds that have merged with the Counties' general funds and which the County has no obligation to maintain separately. Prompt notice of such claims is essential to avoid an accounting and records quagmire. Even assuming there was a duty on the part of superior courts of some form of reasonable notification before the funds reverted to the Counties, that duty would be owed only to those depositors who fell within the second category of section 631.3. If a case had been dismissed or continued with insufficient time to notify the jury that the case would not proceed, the depositor would not be entitled to a refund. (See § 631.3.) Whereas it would be reasonable to expect police officials to maintain records of a particular item of property or a seizure of cash, it is a different matter to require the Counties to have maintained detailed information concerning the reason a transferred deposit had not been returned to the original depositor. Further, because the reverted jury deposit funds represent a proper source of revenue for the county and the courts, it is legitimate to expect the Counties to require prompt notice of a refund claim to promote efficient fiscal planning and to avoid similar liabilities in the future.

Finally, unlike in *Minsky* and *Holt*, this case does not arise in the criminal context where a defendant would have a parallel right to obtain the same property in a criminal action without filing a claim.[3]

In sum, we conclude Hart's failure to allege compliance with the Claims Act bars his claims for the jury deposits that have reverted to the Counties. These claims reflect a suit for "money or damages" to which the Claims Act

[3]Hart's reliance on *Bertone* v. *City & County of S. F.* (1952) 111 Cal.App.2d 579 [245 P.2d 29] is also misplaced. *Bertone*'s conclusion that a local claims act was inapplicable was based on its conclusion that the claim was not "one for damages but is based on [a] writing"—a conclusion that does not apply to the Claims Act. (*Id.* at p. 588.) Further, in *Bertone*, the plaintiff was suing the city which was the holder of the plaintiff's deposit, whereas here the plaintiffs sued each county which was merely the transferee of funds from the courts.

applies. Further, we are unpersuaded that the exception to the Claims Act applicable to the recovery of specific property applies here where Hart has sued the Counties, which did not originally hold the deposits or cause the deposits to revert to the general funds.

### B. *Declaratory Relief*

■ The Claims Act generally applies only to claims for money or damages, and not to actions for declaratory relief. This exception does not apply, however, where the demand for nonmonetary relief is merely incidental or ancillary to a prayer for damages. (*Loehr* v. *Ventura County Community College Dist., supra,* 147 Cal.App.3d at p. 1081.)

■ ■ In his declaratory relief cause of action, Hart sought: (1) "a determination of the defendants' obligations to return jury fee deposits . . . within 3 years of the date the case is terminated unless the. court has determined the fees should be forfeited under [section] 631.3"; and (2) an order stating Counties have a "duty to exert reasonable efforts to find the depositors and to provide legally sufficient notice of the intended taking of the deposits before the money deposited may be returned or converted to the defendants' general funds or use."

■ There is no statutory basis for the first request. Section 631.3 governs the conditions under which the court is permitted to transfer jury deposits held in its accounts to the County. Nothing in the statutory language imposes a duty on the courts to affirmatively return a jury deposit within three years unless it has made a factual determination of forfeit. Further, even if this duty existed, it would fall on the courts not the Counties. Because the courts are separate entities and are not parties to the action, Hart's requested order would not be proper. Contrary to Hart's contentions, a superior court is not.a subagency of a county. Rather, it is a separate branch of government. (See *Sacramento County Employees Organization* v. *County of Sacramento* (1988) 201 Cal.App.3d 845, 853 [247 Cal.Rptr. 333].)

■ With respect to the second requested form of declaratory relief, the request fails. First, to the extent Hart is requesting a determination as to what the Counties should have done in the past, this is merely incidental to the monetary relief he seeks and therefore the Claims Act requirements apply to this claim. (See *Loehr* v. *Ventura County Community College Dist., supra,* 147 Cal.App.3d at p. 1081.) A declaration that a duty was owed would be meaningless in light of plaintiffs' failure to comply with the Claims Act. Moreover, to the extent Hart is requesting a determination as to the future duties of the Counties, the issue is moot. The statute was amended in 1998,

expressly placing the burden on the litigant who deposited funds to request a refund within 20 days from the date on which the action was terminated or a continuance granted. (§ 631.3.)

We also reject Hart's contention that we should reverse the order sustaining the demurrer because the issues in this case involve the legal rights and duties of the parties that should be decided " 'whether or not the facts alleged establish that the [plaintiff is] entitled to a favorable declaration.' " (*Newby v. Alto Riviera Apartments* (1976) 60 Cal.App.3d 288, 304 [131 Cal.Rptr. 547].) This principle applies only where the complaint is sufficient to set forth the existence of an actual controversy relating to the future legal rights of the parties. As we have explained, there is no such future controversy here.

## DISPOSITION

Judgment affirmed.

Work, Acting P. J., and McDonald, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 23, 2000. Mosk, J., was of the opinion that the petition should be granted.