Filed 7/27/22  Global Discoveries v. County of Contra Costa CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| GLOBAL DISCOVERIES, LTD.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF CONTRA COSTA et al.,<br><br>    Defendants and Respondents. | A160787<br><br>(Contra Costa County Super. Ct.<br>  No. N192173) |

Global Discoveries, Ltd. (Global) filed a petition for writ of mandate seeking to set aside the denial of its claim for excess proceeds from a tax default sale.  Defendants and respondents County of Contra Costa (County) and Russell V. Watts, the County's Treasurer-Tax Collector, had denied the claim for failure to submit supporting documentation within a year of the recordation of the deed from the tax sale.

Global alleged that the denial of the claim constituted an abuse of discretion because it was either (1) contrary to the County's own policy regarding excess proceeds claims; or (2) based on that policy, which is

1

(a) invalid as in conflict with Revenue and Taxation Code section 4675,[1] (b) contrary to the public policy embodied in section 4675, and (c) in violation of Global's due process rights. The trial court sustained respondents' demurrer without leave to amend. On appeal, Global argues that it adequately pled an abuse of discretion to have survived demurrer. We affirm.

## BACKGROUND

### I.

### *Section 4675*

Section 4675, subdivision (a) provides, in relevant part: "Any party of interest in the property may file with the county a claim for the excess proceeds, in proportion to that person's interest held with others of equal priority in the property at the time of sale, at any time prior to the expiration of one year following the recordation of the tax collector's deed to the purchaser." Section 4675, subdivisions (b) and (c) detail the process by which a party of interest may assign their right to claim excess proceeds, and the required disclosures and advisements to the party of interest to act on its behalf. Section 4675, subdivision (d) states: "The claims shall contain any information and proof deemed necessary by the board of supervisors to establish the claimant's rights to all or any portion of the excess proceeds."

### II.

### *Claims Policy*

In 2017, the County's Board of Supervisors adopted Resolution No. 2017/301, which adopted the current version of the County of Contra Costa Policy Regarding Claims for Excess Proceeds (Claims Policy).

---

[1] All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

Paragraph 2 of the Claims Policy is entitled "**CLAIM REQUIREMENTS**." It states: "As described below, each claimant must submit a completed Contra Costa County Treasurer-Tax Collector's Excess Proceeds Claim Form and supporting documentation, which provides information and proof of the claimant's right to all or any portion of excess proceeds." Appendix A identifies the supporting documentation required for a particular type of claimant. Lienholders of record, such as mortgage lenders and deed of trust beneficiaries, must submit the "original or certified copy of the promissory note" or a court order pursuant to Civil Code section 3415 "which establishes the existence and terms of a lost note."[2]

Paragraph 3 of the Claims Policy is entitled "**SUBMISSION OF CLAIM**." Subdivision (a) of this paragraph states: "**The deadline (the 'Deadline') to file a completed claim with the Contra Costa County Treasurer-Tax Collector's Office is one (1) year following the date of the recording of the deed to the purchaser of the tax-default property.**" Subdivision (a)(i) states: "A claimant may not file or amend a claim after the Deadline. It is the claimant's sole responsibility to timely submit a complete claim, including all necessary supporting documentation." Subdivision (a)(ii) states: "A claimant may not rely on the Treasurer-Tax Collector's Office to approve or request information to supplement incomplete claims." Paragraph 4, subdivision (d) states: "The Treasurer-Tax Collector's Office will not accept claims or amendments to claims after the Deadline."

---

[2] Civil Code section 3415, subdivision (a) provides: "An action may be maintained by any person interested in any private document or instrument in writing, which has been lost or destroyed, to prove or establish the document or instrument or to compel the issuance, execution, and acknowledgment of a duplicate of the document or instrument."

## III.

### *Global's Claim for Excess Proceeds*

In February 2018, a parcel of real property located in Contra Costa County was sold due to tax default. The sale resulted in approximately $161,229.05 in excess proceeds. The deed from the tax sale was recorded on March 21, 2018.

At the time of the tax sale, there was a promissory note secured by a deed of trust that created a lien against the property with an unpaid balance of $150,064.51. The promissory note was held by five individuals. In September and October 2018, those individuals assigned their interests in the excess proceeds to Global.

On January 31, 2019, Global filed a complaint in Contra Costa Superior Court because it did not have the original promissory note. The complaint sought to obtain an order pursuant to Civil Code section 3415 to establish the existence and terms of the lost note.

On February 21, 2019, Global submitted claims to $150,064.51 of the excess proceeds. The claims noted that Global was "**currently in the process of obtaining a court order to reprove the Note**" and attached the complaint in that action.

On August 15, 2019, the Treasurer-Tax Collector sent a letter to Global stating that its claim had been denied. The Treasurer-Tax Collector subsequently explained the basis of the denial by email: "After a careful review of the claims received for excess proceeds resulting from the tax sale of APN 073-042-004, the Treasurer-Tax Collector determined that Global Discoveries had failed to submit documentation necessary to stablish its rights to all or any portion of the excess proceeds. Although Global Discoveries indicated that it was in the process of seeking a court order to

4

obtain the necessary documentation, Global Discoveries failed to submit such documentation within one year following the date of recording of the deed to the purchaser of the Property, as required by the Revenue and Taxation Code and the County Policy Regarding Claims for Excess Proceeds. Based on Global Discoveries' failure to provide the documentation establishing its right to the excess proceeds, the Treasurer-Tax Collector denied the claim."

On August 27, 2019, the Contra Costa County Superior Court entered judgment establishing the terms of the lost promissory note. Global emailed a certified copy of that judgment to the Treasurer-Tax Collector on August 30, 2019, and asked whether the County was "standing by their denial." The Treasurer-Tax Collector responded: "Yes, the Treasurer-Tax Collector's office is standing by its decision."

## IV.

### *Global's Petition for Writ of Mandate*

Global filed a petition for writ of mandate on November 12, 2019. The trial court sustained defendants' demurrer with leave to amend on February 6, 2020. Global filed a first amended petition on April 7, 2020. Global alleged that defendants had abused their discretion because the denial of its claim was either contrary to the Claims Policy; or based on the Claims Policy, which is invalid as in conflict with section 4675, contrary to the public policy embodied in section 4675, and in violation of Global's due process rights. Global sought a writ of mandate directing respondents to set aside the denial of its claim and pay $150,145.49 of excess proceeds to Global.

Respondents filed a demurrer to the first amended petition on May 7, 2020. The trial court sustained the demurrer without leave to amend and entered judgment in favor of respondents on August 11, 2020. This appeal followed.

5

## DISCUSSION

Global argues that the judgment should be reversed because it adequately pled an abuse of discretion by respondents to have survived demurrer. Before turning to the merits of this argument, we begin with the general framework governing a petition for writ of mandate and demurrer.

### I.

### *General Framework*

A petition for writ of mandate brought under Code of Civil Procedure section 1085 "may be issued against a public body or public officer 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station' in cases 'where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' " (*Flores v. Department of Corrections and Rehabilitation* (2014) 224 Cal.App.4th 199, 205.) " 'Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty.' " (*Ibid.*)

"A 'ministerial duty' is one generally imposed upon a person in public office who, by virtue of that position, is obligated 'to perform in a prescribed manner required by law when a given state of facts exists.' " (*City of King City v. Community Bank of Central California* (2005) 131 Cal.App.4th 913, 926.) "When a court reviews an administrative decision pursuant to Code of Civil Procedure section 1085, it merely asks whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, or whether the agency failed to follow the procedure and give the notices the law requires." (*Kreeft v. City of Oakland* (1998) 68 Cal.App.4th 46, 53.)

6

The standard of review governing an order sustaining a demurrer without leave to amend is "long-settled." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "On appeal, we review the trial court's sustaining of a demurrer without leave to amend de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law and applying the abuse of discretion standard in reviewing the trial court's denial of leave to amend." (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1469.) Global bears the burden of proving the trial court erred in sustaining the demurrer or abused its discretion in denying leave to amend. (See *ibid.*) With this framework in mind, we turn to Global's arguments regarding the demurrer.

## II.

### *No Error in Sustaining Demurrer*

Global argues that it adequately pled an abuse of discretion by respondents to have survived demurrer, relying on its allegations that the denial of the claim was either (1) contrary to the Claims Policy; or (2) based on the Claims Policy that is (a) inconsistent and in conflict with section 4675; (b) contrary to the public policy embodied in section 4675; and (c) in violation of Global's due process rights. We address each in turn.

### A.     *Denial Consistent with Claims Policy*

Global contends that the denial of its claim was an abuse of discretion as contrary to Appendix A of the Claims Policy, which provides that a court order may be used as documentation to support an excess proceeds claim. That provision, however, does not modify the Claims Policy's one-year deadline to submit a completed claim. Paragraph 3(a) of the Claims Policy states: "**The deadline (the 'Deadline') to file a completed claim with the Contra Costa County Treasurer-Tax Collector's Office is one (1)**

7

**year following the date of the recording of the deed to the purchaser of the tax-default property.**"  The Claims Policy is explicit that a claimant may not "amend a claim after the Deadline" and the Treasurer-Tax Collector will not accept "amendments to claims after the Deadline."  It places "sole responsibility" on the claimant "to timely submit a complete claim, including all necessary supporting documentation."

Here, Global's deadline to submit a complete claim, including "all necessary supporting documentation," was March 21, 2019:  one year after the tax sale deed was recorded.  Global sent the judgment to the Treasurer-Tax Collector five months after that deadline had passed.  Respondents had proceeded in a manner consistent with the Claims Policy and already denied the claim.  We thus conclude that Global has not shown an abuse of discretion on this basis.  (Cf. *Verdugo Hills Hospital, Inc. v. Department of Health* (1979) 88 Cal.App.3d 957, 963 [abuse of discretion "may be established if, among other things, the administrative agency has not proceeded in the manner required by law"].)

Global's other assertions do not alter our conclusion.  First, it contends that the denial was "intentionally done preemptively to prevent Global from submitting proof of the lost instrument, in essence denying Global any reasonable opportunity to provide the documentation."  Global alleged no facts to support this contention.  The Treasurer-Tax Collector sent a letter on August 15, 2019, after the one-year deadline had passed, notifying Global that its claim had been denied.  While Global had previously indicated it was in the process of seeking a court order, the Claims Policy states that it is "the claimant's sole responsibility to timely submit a complete claim, including all necessary supporting documentation," and the claimant "may not rely on the Treasurer-Tax Collector's Office to approve or request information to

8

supplement incomplete claims." Respondents' denial of the claim was consistent with the Claims Policy.

Second, Global contends that the Claims Policy's provision for submission of a court order is "illusory and meaningless given the practical reality of the time it takes a civil matter to proceed to judgment." We are not persuaded. Global had knowledge of the Claims Policy long before it received the assignments at issue here: indeed, it had previously sent a letter to respondents requesting changes to the policy. Despite this knowledge, Global acquired the assignments in September and October 2018, *six to seven months after* the tax sale deed had been recorded. It then waited until January 31, 2019, *three to four months after* it received the assignments and *ten months after* the tax sale deed had been recorded, to file a complaint seeking an order establishing the existence and terms of the note. Global also inflicted delays upon the court process: it did not serve the complaint for almost two months and did not request entry of default judgment until three months after the default was entered. These facts do not support Global's assertion that the Claims Policy, coupled with the time it takes to obtain a court order establishing proof of the note, rendered "illusory" the provision allowing such proof. Nor do they support Global's claim that respondents abused their discretion.

## B.    *Claims Policy Consistent with Section 4675*

Global contends that even if the denial was consistent with the Claims Policy, it constituted an abuse of discretion because the Claims Policy itself is void as in conflict with section 4675. We disagree.

Section 4675 sets forth the one-year deadline on a claim for excess proceeds. It requires such claims to be filed "at any time prior to the expiration of one year following the recordation of the tax collector's deed to

9

the purchaser." (§ 4675, subd. (a).) It then explicitly empowers the board of supervisors to determine what is required for such a claim. It states: "The claims shall contain any information and proof deemed necessary by the board of supervisors to establish the claimant's rights to all or any portion of the excess proceeds." (*Id.*, subd. (d).) Section 4675.1 similarly provides that "[t]he board of supervisors of any county may, by resolution, authorize any county officers to perform on its behalf any act required or authorized to be performed by the board of supervisors under Section 4675."

"[W]hen, as here, a public official's authority to act in a particular area derives wholly from statute, the scope of that authority is measured by the terms of the governing statute." (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1086.) The County's Board of Supervisors adopted a resolution that in turn adopted the Claims Policy, which identifies the documentation required for a claim to be completed within the one-year deadline. Global has failed to persuade us that the Claims Policy was in conflict with section 4675's one-year filing deadline and authorization for the board to determine the proof required for such claims. Global has failed to show an abuse of discretion on this basis.

## C. *Legislative Purpose of Section 4675*

Global also argues that the denial of its claim was an abuse of discretion because it is "contrary to the public policy" embodied within section 4675, enacted as a "remedial measure to protect former owners and lien-holders." As with all questions of statutory interpretation, however, we attempt to discern the legislative intent of section 4675 by starting with its language. (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 288.) "The plain meaning controls if there is no ambiguity in the statutory language." (*People v. Cornett* (2012) 53 Cal.4th

1261, 1265.) Here, the language of section 4675 does not afford former owners or lien-holders automatic protection of their interests. Instead, "it is up to the claimants themselves to come forward and file their claims within one year after the tax sale." (*Fjaeran v. Board of Supervisors* (1989) 210 Cal.App.3d 434, 441.) Moreover, as explained above, the statutory language explicitly delegates authority to the board to determine the necessary proof. We thus conclude that Global has not shown an abuse of discretion on this basis.

D. *Due Process*

Finally, Global contends that the denial of its claim was an abuse of discretion because Global and its assignors were deprived of "vested property rights" without due process. Specifically, Global alleged that a due process violation occurred because the County controlled *both* (1) the timeline for approval of the claim under the Claims Policy; and (2) "the timeline for the issuance of the final Judgment in Global's judicial action through the Contra Costa County Superior Court." Again, we are not persuaded. "[A] superior court is not a subagency of a county. Rather, it is a separate branch of government." (*Hart v. County of Alameda* (1999) 76 Cal.App.4th 766, 782; see also Cal. Const., art. VI, § 1 [vesting judicial power of California "in the Supreme Court, courts of appeal, and superior courts"].) Neither the County nor its Treasurer-Tax Collector has control over the timeline for the superior court to issue an order establishing the existence and terms of a lost note.

Global's argument is also premised on the same faulty assertion that this timeline renders submission of a completed claim within the one-year deadline "impossible." As explained above, the facts instead show a lack of diligence by Global in pursuing the action: waiting three months after it received the assignments to file a complaint, waiting another two months to

11

serve the complaint, and waiting another three months between the entry of default and its request for entry of default judgment. Global has not sufficiently stated a claim for abuse of discretion based on lack of due process.

In sum, we conclude that the trial court did not err in sustaining respondents' demurrer.

## III.

### *No Abuse of Discretion in Denying Leave to Amend*

Global argues in a single sentence of its opening brief that the trial court abused its discretion in denying Global further leave to amend because it "could have alleged in more detail that the County's conduct in denial of Global's Claim was an abuse of discretion." Given our conclusion that the bases of these allegations are fatally deficient, we conclude that the trial court did not abuse its discretion in denying leave to amend. (*Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 820-821 [affirming judgment where plaintiff offered no new factual allegations to merit an opportunity to further amend the complaint or to demonstrate that the trial court abused its discretion in sustaining demurrer without leave to amend].)

## DISPOSITION

The August 11, 2020 judgment is affirmed. Respondents are entitled to their costs on appeal.

_____
                                STEWART, J., Acting P.J.


We concur.


_____
MILLER, J.


_____
MAYFIELD, J. *


*Global Discoveries, Ltd. v. Contra Costa County* (A160787)

       *  Judge of the Mendocino Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.