Filed 12/24/25  Goleco v. Cal. Dept. of Corrections and Rehabilitation CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CHRISTOPHER GOLECO, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, <br><br> Defendant and Appellant. | B323434 c/w B325954 <br> (Los Angeles County <br> Super. Ct. No. BC588978) |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge. Reversed and remanded.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Nancy James, Miguel Neri and Gregory Call, Deputy Attorneys General, for Defendant and Appellant.

Schimmel & Parks, Alan I. Schimmel, Michael W. Parks, and Arya Rhodes; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiff and Appellant.

————————————

Christopher Goleco sued the California Department of Corrections and Rehabilitation (CDCR) for wage statement violations and whistleblower retaliation. Goleco claimed CDCR retaliated against him for protected conduct by refusing to promptly comply with an existing order of the State Personnel Board awarding Goleco reinstatement as a CDCR employee, back pay, interest, and benefits following his wrongful dismissal. A jury found in Goleco's favor and awarded him more than $4 million in damages. On appeal, CDCR challenges the judgment, and both parties challenge the subsequent order awarding Goleco attorney's fees and costs. Of all the issues raised in these appeals, we need only reach two. We agree with CDCR that the verdict on Goleco's wage statement claim cannot stand because the relevant wage order provision does not apply to state employees such as Goleco. We also agree with CDCR that Goleco did not establish that he satisfied the claim presentation requirement of the Government Claims Act before filing his lawsuit, which was a required element of Goleco's whistleblower action. Although Goleco sent a demand letter to CDCR prior to filing his lawsuit, he did not send it to the proper government entity and thus failed to timely present a government claim.

Accordingly, we reverse the judgment, vacate the order on attorney's fees and costs, and remand for the trial court to enter judgment in CDCR's favor.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Goleco's Dismissal and Eventual Reinstatement*

Goleco began working for CDCR in 2004 as a medical technical assistant. In 2005, CDCR dismissed him for his delay

in administering cardiopulmonary resuscitation to an inmate who died after being strangled and beaten.

Goleco challenged his dismissal. An administrative law judge recommended the dismissal be revoked, but the State Personnel Board rejected the recommendation and sustained the dismissal. The superior court granted Goleco's petition for writ of administrative mandate, set aside the dismissal, and directed the State Personnel Board to consider new evidence regarding the inmate's death. After doing so, the State Personnel Board again upheld the dismissal. The superior court granted a second writ petition, revoked the dismissal, and ordered CDCR to reinstate Goleco with full back pay after determining there was no substantial evidence he had neglected his duty because it was clear the inmate had been dead for some time before Goleco arrived at the scene. This court affirmed the superior court's ruling. (*Goleco v. State Personnel Board* (Aug. 20, 2013, B240755) [nonpub. opn.].)

In 2013, almost eight years after Goleco's dismissal, the State Personnel Board issued a formal resolution revoking the dismissal and ordering CDCR to pay Goleco "all back pay, interest, and benefits, if any, that would have accrued to him had he not been dismissed." Any disagreement regarding the salary and benefits due to Goleco was referred to the administrative law judge.

In 2014, Goleco returned to work for CDCR as a correctional officer,[1] and CDCR began the process of calculating

---

[1] After Goleco's dismissal, CDCR eliminated the position of medical technical assistant that he had held. CDCR provided Goleco the choice between working as a nurse or a correctional

3

Goleco's back pay, interest, and benefits. This process required reconstructing Goleco's employment history for the lengthy period between his dismissal and reinstatement and verifying whether any deductions were required under Government Code section 19584 based on his earnings from other employment and his inability to work for some of the period.

B.      *Current Lawsuit*

In February 2015, Goleco sent a letter, through counsel, to CDCR's Secretary, General Counsel, and Office of Legal Affairs, expressing dissatisfaction that CDCR had not yet fully complied with the State Personnel Board order to pay him all back pay, interest, and benefits. The letter further asserted that CDCR's continuing delay and refusal to comply with the State Personnel Board order were part of CDCR's retaliation against him for engaging in protected activities, including reporting CDCR's illegal workplace practices. Goleco estimated his damages from CDCR's retaliation exceeded $5 million and proposed the parties mediate the dispute in lieu of litigation.

In July 2015, Goleco filed the underlying lawsuit. In the operative first amended complaint, he alleged two causes of action: one for whistleblower retaliation under Labor Code section 1102.5 and the other for wage statement violations under section 7 of Industrial Welfare Commission Wage Order No. 4-2001 (Wage Order No. 4; see Cal. Code Regs., tit. 8, § 11040). Goleco alleged that, in retaliation for his participation in litigation involving CDCR and his reporting of illegal workplace

officer upon his reinstatement. He chose the latter, which required him to complete additional training at the correctional officer academy before returning to work.

4

conduct, CDCR had delayed reinstating him and paying him all amounts he was owed under the State Personnel Board order, failed to credit him with benefits and seniority to which he was entitled, and left him unassigned or assigned him to job tasks intended for lower seniority personnel once he had been reinstated. Goleco also alleged CDCR had refused to provide him with complete and accurate wage statements or a timely accounting of wages and benefits he was owed. Goleco requested various damages for his claims and alleged specifically that he had suffered more than $1 million in compensatory damages and general damages for "profound hardships, distress, pain and suffering" in excess of $2 million. For each claim, Goleco also requested equitable relief, including restitution, accounting, and a declaration of his rights to full and prompt payment of all undisputed wages, interest, and benefits.

In 2016 and 2017, while the case was ongoing, CDCR completed its back pay calculation and provided Goleco a series of payments totaling $481,086.72. In early 2018, CDCR paid Goleco $200,631.55 in interest for the delay in payment of the back pay.

In 2019, CDCR moved for summary judgment on Goleco's claims, arguing, among other grounds, that the wage statement claim was based on a wage order provision that did not apply to Goleco because he was a state employee and that Goleco failed to comply with the claim presentation requirement of the Government Claims Act before filing his lawsuit. CDCR proffered evidence that the entity designated by the Government Claims Act to receive government claims against the state had not received a claim regarding Goleco. The trial court denied CDCR's motion, determining that a factual dispute remained as to whether section 7 of Wage Order No. 4 applied to Goleco based

5

on his state bargaining unit membership and as to Goleco's compliance with the Government Claims Act based on the February 2015 demand letter he sent to CDCR.[2]

The matter proceeded to a jury trial in October 2021.[3] Goleco testified the February 2015 demand letter was addressed to CDCR, and the letter was admitted into evidence. Goleco did not present any evidence that the statutorily-designated entity was served with, or actually received, the February 2015 demand letter or another purported government claim before he filed his lawsuit. CDCR presented evidence that the February 2015 demand letter did not satisfy the claim presentation requirement because it was not addressed to a proper recipient.

Over CDCR's objection, the court agreed to instruct the jury that "substantial compliance" with the claim presentation requirement of the Government Claims Act was sufficient. The court expressed its understanding that substantial compliance could be shown by the fact that CDCR was already aware of and engaged in the conflict with Goleco because of the past legal actions and ongoing discussions regarding Goleco's reinstatement and back pay.

In closing, Goleco argued his February 2015 demand letter to CDCR demonstrated he had at least "substantially complied" with the claim presentation requirement. CDCR disputed that

_____

[2] In December 2019, days after the hearing on the summary judgment motion, Goleco presented a government claim to the Department of General Services.

[3] Before trial, CDCR unsuccessfully moved for an initial separate trial on its Government Claims Act defense, arguing Goleco's failure to file a government claim with the proper entity constituted a bar to his claims and was thus a dispositive issue.

6

conclusion and pointed out that CDCR was not the proper entity to which Goleco was to present his government claim.

The jury returned a general verdict in Goleco's favor on both of his claims and awarded him $4,075,000 in undifferentiated damages.[4]  After trial, Goleco moved for equitable relief, seeking protection from further retaliation and assurance that CDCR would fully comply with the State Personnel Board's 2014 order regarding his reinstatement.  In opposition, CDCR argued, among other grounds, that the requested equitable relief was merely duplicative of the State Personnel Board order.  The trial court granted Goleco's post-verdict motion and ordered CDCR to treat Goleco as though he had been continuously employed from his initial hire to the present.  The court ruled Goleco was entitled to an accounting for and receipt of all back pay, interest, benefits, and pension credits during the period of his dismissal.  The court also ordered that CDCR was not to deny Goleco's status as a permanent employee at the time of his dismissal nor could it deny any other reinstatement or public employee rights to which he was entitled. The court entered judgment against CDCR in the amount of $4,075,000 "together with entry of the equitable, injunctive and

---

[4]     CDCR requested a special verdict form be used that would specifically ask the jury whether Goleco had satisfied the claim presentation requirement.  The court decided instead to use the general verdict form suggested by Goleco that did not ask the jury for an answer to this question.  In addition, although CDCR requested that the verdict form specify the allocation of damages between the two causes of action, the court agreed with Goleco not to specify the damages award for each cause of action and instead to have the jury award one lump sum.

declaratory relief rulings." The court subsequently awarded Goleco $1,633,840 in attorney's fees and $103,032.51 in costs.

CDCR moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. As relevant here, CDCR argued the evidence did not support the jury's findings that Goleco complied with the claim presentation requirement of the Government Claims Act and that CDCR violated Wage Order No. 4 with respect to Goleco. CDCR argued that strict compliance, not substantial compliance, was necessary for the claim presentation requirement. The trial court denied the motions.

Each party appealed the judgment and order on attorney's fees and costs. We consolidated the separate appeals.

## DISCUSSION

A.  *Standard of Review*

" 'When a party contends insufficient evidence supports a jury verdict, we apply the substantial evidence standard of review.' " (*McDoniel v. Kavry Management, LLC* (2025) 114 Cal.App.5th 949, 965.) "Our review '*begins* and *ends* with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination.' " (*Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 37; see *Duncan v. Kihagi* (2021) 68 Cal.App.5th 519, 541.) " 'We must "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor." ' " (*Duncan*, at p. 541.)

" 'Where no special findings are made, the reviewing court may infer that "the jury by its general verdict found for respondent on every issue submitted." [Citation.] Specifically,

8

the jury's general verdict "imports findings in favor of the prevailing party on all material issues; and if the evidence supports implied findings on any set of issues which will sustain the verdict, it will be assumed that the jury so found." ' " (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1193.)

We review legal issues, including those involving statutory interpretation and the application of the law to undisputed facts, de novo. (*Niedermeier v. FCA US LLC* (2024) 15 Cal.5th 792, 804; *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912.)

B.     *Section 7 of Wage Order No. 4 Does Not Apply to Goleco*

CDCR argues the verdict on Goleco's claim under Wage Order No. 4 cannot stand because the relevant wage order provision does not apply to Goleco as a state employee. Although Goleco does not respond to this argument in his respondent's brief, "a respondent's *complete failure* to address an appellant's argument does not require us to treat the failure as a concession the argument has merit," and we must instead "examine the record to see if it supports any claims of error made by the appellant." (*Griffin v. The Haunted Hotel, Inc.* (2015) 242 Cal.App.4th 490, 505; accord, *Bustos v. Wells Fargo Bank, N.A.* (2019) 39 Cal.App.5th 369, 374.)

Wage Order No. 4 is a regulation adopted by the Industrial Welfare Commission that "governs wages, hours, and working conditions in professional, technical, clerical, mechanical, and similar occupations." (*Stoetzl v. Department of Human Resources* (2019) 7 Cal.5th 718, 725.) Goleco based his claim on section 7 of Wage Order No. 4, which requires employers to provide accurate itemized wage statements to employees.

9

However, subject to some exceptions, Wage Order No. 4 does not apply to state employees.  Section 1(B) of Wage Order No. 4 states:  "*Except as provided in Sections 1, 2, 4, 10, and 20*, the provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district."  (Italics added; see *Stoetzl v. Department of Human Resources*, *supra*, at p. 726 ["Thus, only sections 1, 2, 4, 10, and 20 of Wage Order No. 4 govern state employment."]; see also *Stone v. Alameda Health System* (2024) 16 Cal.5th 1040, 1057 [identical carve-out language in Wage Order No. 5 "*expressly excludes* public employers from most of the wage and hour obligations it places on private employers"].)  Section 7 is not listed as one of the excepted sections in section 1(B), and thus the wage statement requirement under that provision is not applicable to state employees like Goleco.  (Cf. *Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289, 300-301 [public employee's minimum wages claim under Wage Order No. 4 could proceed because applicable provision, section 4, among those excepted under section 1(B) of the wage order].)

It was therefore error to enter judgment in Goleco's favor on his wage statement claim.

C.    *Goleco Failed To Comply with the Government Claims Act*

CDCR contends that to the extent the jury made an implied finding that Goleco's February 2015 demand letter to CDCR satisfied the claim presentation requirement of the Government Claims Act, that finding is not supported by the evidence because there was no evidence that the letter was sent to or received by the statutorily-designated recipient for claims against the state.

10

Because Goleco bore the burden to prove this element, CDCR contends the verdict on Goleco's whistleblower retaliation cause of action cannot stand. On appeal, Goleco "concedes that the February 2015 letter did not satisfy the requirements of the claims statute." But Goleco offers several arguments for why the Government Claims Act still does not mandate reversal here. We are not persuaded.

1. *Applicable law*

The Government Claims Act pertains to suits for money or damages filed against public entities and is codified in the statutes contained in division 3.6 of the Government Code (Gov. Code, § 810 et seq.). (See *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 989 (*DiCampli-Mintz*).) "[T]he intent of the Government Claims Act is . . . 'to confine potential governmental liability to rigidly delineated circumstances.'" (*Id.* at p. 991.) Consistent with this aim, the Government Claims Act imposes certain procedural requirements that a party must comply with before filing an action in court. (See *id.* at pp. 989-990; *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 737-738 (*City of Stockton*).) Among these, Government Code section 945.4 sets forth a claim presentation requirement and provides that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ." Government Code section 911.2, subdivision (a), requires that a personal injury claim against a public entity be presented "not later than six months after the accrual of the cause of action." (See *City of Stockton*, at p. 738.) "[U]nder these

11

statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239; accord, *DiCampli-Mintz*, at p. 990; *City of Stockton*, at p. 738.) Claims against a public entity for whistleblower retaliation under Labor Code section 1102.5 are subject to the Government Claims Act and its six-month claim presentation deadline. (See *Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237, 245-246.)[5]

Claims for money or damages for injury for which the state is liable must be presented in accordance with the procedural requirements set forth in Government Code sections 900 through 915.4. (Gov. Code, § 905.2, subd. (b)(3).) During the time period relevant here, Government Code section 915, former subdivision (b), provided that a claim against the state must be presented "by either of the following means: [¶] (1) Delivering it to an office of the Victim Compensation and Government Claims Board. [¶] (2) Mailing it to the Victim Compensation and Government Claims Board at its principal office."[6] In addition, section 915, former subdivision (e)(2), provided that a claim shall be deemed

---

[5] Because we have concluded the verdict in favor of Goleco on his wage statement cause of action cannot stand because Wage Order No. 4 does not apply to him as a state employee, we need not address whether that cause of action is also subject to the claim presentation requirement.

[6] Effective June 27, 2016, claims against the state are to be presented to the Department of General Services. (Gov. Code, § 915, subd. (b); see Stats. 2016, ch. 31, § 40.) The parties do not suggest the change in the statute from the Victim Compensation and Government Claims Board to the Department of General Services affects the outcome here.

properly presented "if, within the time prescribed for presentation thereof . . . [i]t is *actually received* at an office of the Victim Compensation and Government Claims Board." (Italics added; see *DiCampli-Mintz*, *supra*, 55 Cal.4th at p. 990 [subdivision (e) "clearly and narrowly sets forth how actual receipt may meet the [claim] presentation requirement"].)

The claim presentation requirement is meant to streamline the adverse claims process by ensuring the proper public entity receives sufficient information to timely and adequately investigate and settle, if appropriate, claims without expensive litigation. (See *DiCampli-Mintz*, *supra*, 55 Cal.4th at pp. 990-991; *City of Stockton*, *supra*, 42 Cal.4th at p. 738.) The requirement " 'is based on a recognition of the special status of public entities, according them greater protection than nonpublic entity defendants, because . . . public entities . . . will incur costs that ultimately must be borne by the taxpayers.' " (*DiCampli-Mintz*, at p. 991, fn. 8.) These public policies support "strict application" of the claim presentation requirement. (*Ibid.*; accord, *Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1120.) To that end, compliance with the claim presentation requirement is mandatory even if the public entity has actual knowledge of the circumstances surrounding the claim. (*DiCampli-Mintz*, at p. 990; accord, *City of Stockton*, at p. 738; *County of Los Angeles v. Quinn Emanuel Urquhart & Sullivan, LLP* (2025) 115 Cal.App.5th 489, 514-515 (*Quinn Emanuel*); *California Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1591.)

In addition, "substantial compliance" with Government Code section 915 is insufficient where a claim was never presented to or received by the proper public entity. (*DiCampli-*

13

*Mintz, supra*, 55 Cal.4th at pp. 989, 991-992; see also *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 770; *Life v. County of Los Angeles* (1991) 227 Cal.App.3d 894, 900-901.) In *DiCampli-Mintz*, the plaintiff provided notice of her intent to sue to the hospital risk management department instead of the county that owned and operated the hospital, as required under section 915, subdivisions (a) and (e)(1) (provisions that are virtually identical to the provisions relevant here—subdivisions (b) and (e)(2)— except that they apply to claims against a local public entity). (See *DiCampli-Mintz*, at p. 987.) The Supreme Court explained section 915, subdivision (a), "reflects the Legislature's intent to precisely identify those who may receive claims on behalf of a local public entity," and subdivision (e)(1) "reflects the Legislature's intent that a misdirected claim will satisfy the presentation requirement if the claim is 'actually received' by a statutorily designated recipient." (*DiCampli-Mintz*, at p. 992.) But "[i]f an appropriate public employee or board *never receives the claim*, an undelivered or misdirected claim fails to comply with the statute." (*Ibid.*, italics added.) Because the plaintiff acknowledged she had presented her claim to the wrong public entity and could not establish the correct public entity actually received her misdirected claim, the court concluded the plaintiff failed to comply with the claim presentation requirement, thus barring her suit. (*Id.* at pp. 991-992; see also *Quinn Emanuel, supra*, 115 Cal.App.5th at pp. 515-516 [demurrer properly sustained where complaint was devoid of allegations that purported government claim was "mailed or delivered to or actually received by a statutorily designated recipient" under Gov. Code, § 915].)

14

"The claimant bears the burden of ensuring that the claim is presented to the appropriate public entity." (*DiCampli-Mintz, supra*, 55 Cal.4th at p. 991.) Because timely presentation of a written claim " 'is a condition precedent to the maintenance of any cause of action against the public entity,' " it is also " 'an *element* that a plaintiff is required to prove in order to prevail.' " (*DiCampli-Mintz*, at p. 990; accord, *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 209; *Quinn Emanuel, supra*, 115 Cal.App.5th at pp. 514-515; *California-American Water Co. v. Marina Coast Water Dist.* (2022) 86 Cal.App.5th 1272, 1286-1287; see e.g., *Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1069 [reversing jury verdict against CDCR because plaintiff failed to show compliance with claim presentation requirement].)

2. *Goleco presented no evidence that he submitted a timely government claim to the proper entity prior to filing his lawsuit*

Goleco filed his lawsuit in July 2015. At trial, Goleco asserted he complied with the claim presentation requirement based on the February 2015 demand letter he sent to CDCR's Secretary, General Counsel, and Office of Legal Affairs. Although Goleco consistently maintained in the trial court that the demand letter constituted at least substantial performance of the claim presentation requirement, Goleco now concedes it does not demonstrate compliance with the claim presentation requirement and that a substantial compliance theory is not viable under *DiCampli-Mintz*. We agree with Goleco's new position. The fact that Goleco sent the demand letter to CDCR, and that CDCR had actual knowledge of his intent to sue, does not satisfy the claim presentation requirement. (See *DiCampli-*

15

*Mintz, supra*, 55 Cal.4th at pp. 989, 991-992.)  And no evidence was presented at trial that the demand letter or any other potential government claim was delivered to, mailed to, or actually received by the proper recipient—the Victim Compensation and Government Claims Board—before Goleco filed his lawsuit.  (See Gov. Code, § 915, former subds. (b), (e).)  The record thus does not contain substantial evidence establishing Goleco complied with the claim presentation requirement, a necessary element of his whistleblower retaliation cause of action.

  3.  *Goleco's arguments that the claim presentation requirement does not apply are meritless*

  Instead of relying on the February 2015 demand letter, Goleco now relies on several other arguments that the claim presentation requirement does not apply to bar his claims.  None is persuasive.

  Goleco first argues the requirement did not apply to his action because he sought nonmonetary relief, with only an incidental damages claim.  The claim presentation requirement applies to actions "for money or damages" (Gov. Code, § 945.4), and as a general rule, the Government Claims Act does not "impose any requirements for nonpecuniary actions, such as those seeking injunctive, specific or declaratory relief."  (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1081.)  Some cases have held that the claim presentation requirement does not apply "where a damages claim is incidental to a claim for other relief, such as mandamus or injunctive relief."  (*Bates v. Franchise Tax Bd.* (2004) 124 Cal.App.4th 367, 385 [collecting and discussing cases].)  Other cases have rejected this approach, pointing out the Government Claims Act "contains no

16

exception for 'incidental damages.' " (*TrafficSchoolOnline, Inc. v. Clarke* (2003) 112 Cal.App.4th 736, 741; see also *Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1163-1164, 1166 [discussing split in authority on issue].) But even if such an exception exists, the claim presentation requirement "remains applicable to actions in which money damages are not incidental or ancillary to any specific relief that is also sought, but the primary purpose of the action." (*Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 762 (*Gatto*); accord, *Hart v. County of Alameda* (1999) 76 Cal.App.4th 766, 782.)

Goleco's argument that his pursuit of damages was only incidental to his requests for nonmonetary relief does not withstand scrutiny. Goleco alleged CDCR's failures to promptly comply with the State Personnel Board's order that CDCR reinstate him and pay him back pay, interest, and benefits constituted retaliation under Labor Code section 1102.5. For that retaliation, Goleco sought damages *in addition to* any back pay, interest, and benefits he was already owed. Goleco thus prominently requested various damages for each cause of action in his first amended complaint and prayed for monetary relief that he estimated to be in excess of $3 million. In fact, damages were the first remedy listed in the caption and prayer for relief in Goleco's complaint.[7] (See *Gatto*, *supra*, 98 Cal.App.4th at p. 763 [fact that damages were listed first in the caption and prayer for

_____

[7] While Goleco relies on the fact that his original complaint contained a third cause of action for equitable relief, he ignores the fact that the pleading was captioned "complaint for damages, equitable and declaratory relief," listing the request for damages first.

relief suggested money damages were not merely incidental to equitable relief sought].)

Moreover, at trial, Goleco called an expert economist to testify about his economic damages and referred to the witness's calculations in asking the jury for $6 million in damages based on past and future harm. He received a damages award of more than $4 million. Although Goleco also requested and received equitable relief after the jury trial that largely reaffirmed his rights under the State Personnel Board's reinstatement order, it is clear that when the complaint, the trial testimony, and the underlying circumstances are considered together, monetary relief was not merely incidental in this action, but rather its primary purpose. (See *Bates v. Franchise Tax Bd.*, *supra*, 124 Cal.App.4th at pp. 386-387 [damages claims not merely incidental where each cause of action culminated in allegation that statutory violation gave rise to both general and mental suffering damages]; *Gatto*, *supra*, 98 Cal.App.4th at pp. 762-763 [damages claim not merely incidental where plaintiff sued on own behalf and never expressed interest in vindicating rights of others and mentioned damages first in the title of complaint and prayer for relief]; *Loehr v. Ventura County Community College Dist.*, *supra*, 147 Cal.App.3d at pp. 1081-1082 [damages claim not merely incidental where causes of action styled as claims for nonmonetary relief also sought monetary recovery for loss].)

*Eureka Teacher's Assn. v. Board of Education* (1988) 202 Cal.App.3d 469 does not support Goleco's position. In that case, a substitute teacher brought a mandamus action seeking immediate reemployment as well as back pay and fringe benefits. (*Id.* at p. 472.) The trial court determined the teacher was entitled to reemployment but denied the request for back pay and

18

benefits based on the teacher's failure to comply with the claim presentation requirement. (*Ibid*.) The appellate court reversed, holding the claim presentation requirement did not apply because the request for back pay and benefits was incidental to the teacher's mandamus action for reemployment and thus not a claim for money or damages. (*Id*. at p. 476.) The same circumstances are not present here. In filing his lawsuit, Goleco was not seeking reemployment with CDCR or incidental monetary relief for his wrongful dismissal. As discussed, he had already obtained such relief through the State Personnel Board's reinstatement order. In this action, Goleco sought damages for CDCR's retaliation *in addition to* any back pay, interest, and benefits he was already owed. Thus, *Eureka Teacher's Association* is not on point.[8]

---

[8] Although he argues his request for damages was merely incidental to his requests for nonmonetary relief, Goleco also admits that his "claim for damages for retaliation asserted in the first cause of action was subject to the claim-presentation requirement." He contends CDCR should have moved to strike his damages claim from the cause of action and that he would still be "entitled to continue to pursue his lawsuit asserting claims not subject to the claim-presentation requirement." Aside from damages, however, the relief Goleco requested on his whistleblower retaliation cause of action—restitution, accounting, and declaratory relief regarding Goleco's rights to an accounting and back pay, interest, and benefits—all sought to either identify or recover money that he alleged CDCR owed to him. The primary purpose of that cause of action was to obtain monetary relief, no matter that several of the requested remedies were styled as equitable ones. (See *Loehr v. Ventura County Community College Dist.*, *supra*, 147 Cal.App.3d at pp. 1081-

Goleco's other two arguments rely on an additional government claim he submitted shortly after the court denied CDCR's motion for summary judgment in December 2019. First, he contends the state waived any claim presentation defense because its response to the December 2019 claim did not identify which claims, if any, were untimely, as required under Government Code section 911.3.[9] "Section 911.3, subdivisions (a) and (b) require that the board [of a public entity], or its designee give written notice to the claimant that a claim was untimely. Failure to do so waives a timeliness defense." (*DiCampli-Mintz*, *supra*, 55 Cal.4th at p. 988, fn. 5.) Goleco specifically contends that although the state's response to his December 2019 claim indicated some portions of that claim were untimely, the state did not identify with the requisite specificity which portions were untimely, with the result that the state has fully waived any claim presentation defense to the instant lawsuit.

Goleco provides no authority for the proposition that lack of specificity as to which portion of a claim is untimely results in waiver of the defense. But even assuming Goleco's argument

_____

1082, 1087 [primary purpose of two causes of action was monetary despite being styled as claims for equitable relief].) Goleco's retaliation cause of action as a whole is barred for the failure to satisfy the claim presentation requirement.

[9] Goleco did not argue in the trial court that CDCR should be equitably estopped from asserting a claim presentation defense in light of its response to his December 2019 claim. (See *Santos v. Los Angeles Unified School Dist.* (2017) 17 Cal.App.5th 1065, 1076 [" ' "It is well-settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act." ' "].)

may have merit in some circumstances, it is misplaced here. A government claim must be submitted *before* a lawsuit is filed. (See Gov. Code, §§ 912.4, 945.4; *Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 906 ["Compliance with the claim requirement is a condition precedent to suing the public entity."]; *Shirk v. Vista Unified School Dist.*, *supra*, 42 Cal.4th at p. 209 ["Only after the public entity's board has acted upon or is deemed to have rejected the claim may the injured person bring a lawsuit alleging a cause of action in tort against the public entity."].) Goleco filed his lawsuit in July 2015, more than four years before he presented the December 2019 claim. Regardless of whether he could have raised a waiver argument under section 911.3 in a separate lawsuit filed after the December 2019 claim, Goleco cannot use a government claim presented after this lawsuit commenced to cure his failure to properly present a claim before the suit was filed. (See *Le Mere v. Los Angeles Unified School Dist.*, *supra*, 35 Cal.App.5th at p. 247 ["Appellant has not cited nor are we aware of any cases permitting a plaintiff to 'cure' her failure to file a prelawsuit claim by filing a postlawsuit claim, particularly when the claim is filed a year after the lawsuit commenced."].) Stated another way, Goleco cannot get around his failure to comply with the notice requirement by presenting a belated claim to the proper recipient and then trying to poke holes in the state's response to that irrelevant claim.

Goleco also contends that he was entitled to any damages incurred in the six months before his December 2019 claim and CDCR cannot argue that the total damages award should be reduced to provide for only those six months' worth of damages in light of its failure to ask the court to apportion the damages award in any way. Like Goleco's waiver theory, this argument

rests on the faulty premise that the December 2019 government claim had an effect on Goleco's ongoing lawsuit.  It had none.

## DISPOSITION

The judgment is reversed and the order on attorney's fees and costs is vacated.  On remand, the trial court shall enter a new judgment in CDCR's favor.  CDCR is entitled to its costs on appeal.


STONE, J.

We concur:


MARTINEZ, P. J.



FEUER, J.